## THE STATE, VAN VORST et al., prosecutors, *vs.* THE MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. Where the common council of Jersey City refer an application to construct a sewer, to a committee, to examine and report upon the matter, a majority of the committee are a quorum, and competent to act.

2. The proceedings to construct a sewer will not be set aside on account of a variance between the application and other proceedings in the name of a street, if the exact locality can be fixed by other streets and sewers named in the proceedings. The discrepancy should appear affirmatively to invalidate the proceedings.

3. The provisions of the 55th section of the charter of Jersey City, in the laws of 1851, relative to constructing sewers, is repealed by the act of 1854, except as to the preliminary proceedings which precede the decision of the common council that the work should be done.

4. If a municipal corporation attempt to act in accordance with a statute not in force, it does not affect their proceedings, provided such proceedings are in accordance with existing laws.

5. It is not necessary that the common council should decide, by *ordinance*, that a sewer shall be built; it may be done by *resolution*.

6. Nor is it necessary for the common council to state, in their decision, that the sewer " is required for the benefit or convenience of the citizens or the promotion of the public health."

7. If, after the order is made by common council, it become necessary to extend the sewer further in the same street than was originally contemplated, in order to complete it and make it available, a second order may be made ordering such extension.

---

On *certiorari* to review the proceedings of the mayor

and common council of Jersey City in constructing certain sewers.

Argued at February Term, 1859, before the CHIEF JUSTICE, and Justices OGDEN, VREDENBURGH and WHELPLEY.

*A. Whitehead*, for plaintiffs in *certiorari*.

*McClelland* and *Zabriskie*, for defendants.

The opinion of the court was delivered by

The CHIEF JUSTICE. The *certiorari* in this case is brought to review the proceedings of the defendants touching the construction of a main sewer in South Fifth street, in said city, together with certain lateral sewers connecting therewith. The prosecutors complain that the proceedings by which their property is affected were not had in compliance with the provisions of the charter, and are in divers respects illegal.

The *fifth* reason assigned for setting aside the proceedings is, that the committee on sewers, to whom the application was referred, did not meet at the time specified in the order of council to hear the parties interested in the application. The objection is not true in point of fact. It was founded upon the return originally made to the writ. But by the amended return, it appears that the time first appointed for the meeting was subsequently altered by council, and that the committee did meet at the time thus specified.

The *second* objection urged to the proceeding is, that the committee to whom the application was referred consisted of three persons; that the report is signed by two only; and that it does not appear that more than two met, or that the third had notice of the meeting.

The objection is not sustained in point of fact. It does not appear that at the time the committee consisted of three persons; on the contrary, from the report, it would

State v. Jersey City.

seem that two composed the committee. But whatever
may have been the number, the report states that the
committee met. If three were necessary to constitute the
committee, the legal presumption is that they all met.
But, admitting the fact to be as alleged, that the reference
was to a committee of three, and that two only acted, it
constitutes no valid objection to the proceedings. By the
charter, the common council are directed to appoint a time
when the persons interested may be heard before them, or
before the appropriate committee, on the merits of the ap-
plication. The committee were to exercise no judicial
powers; they were simply to examine and report to council,
who are to decide upon the application. The committee
did report that they met at the time appointed; that no
person appeared before them to advocate or oppose the
application, and they recommended to council the adoption
of a resolution, reported by them, favorable to the applica-
tion. In the absence of any by-law of the corporation to the
contrary, a majority of the committee were a quorum, and
competent to act.

The *third* objection is, that the sewer ordered to be con-
structed is different from that applied for—the sewer applied
for being in Fifth street, and that ordered to be constructed
being in South Fifth street. Upon the face of the proceed-
ings, it does not appear but that Fifth street and South Fifth
street are one and the same street. The discrepancy should
appear affirmatively, in order to sustain the objection. By
the exhibition of the map, it appears that the streets in
reality are not the same, but different streets. But it also
appears from the maps, that the streets containing lateral
sewers, named in the application and in the proceedings, as
connected with the main sewer, fixed the locality of the
proposed improvement, and left no possible room for doubt
as to its location or to the identity of the improvement, as
made with that described in the application. The notice and
all the subsequent proceedings described it truly as in South
Fifth street.

Numerous other objections are taken to the proceedings, on the ground that they are not in conformity with the remaining provisions of the 55th section of the city charter. *Pamph. Laws*, 1851, 416. It is admitted, on the part of the defendants, that the proceedings are not in compliance with that act, and the only question is, whether its provisions are now in force. The act directs that, after the council shall have decided upon the improvement to be made, they shall appoint commissioners, who shall determine what real estate will be benefited; shall estimate the whole cost of the improvement; shall cause a survey and map of the improvement and lands benefited to be made; shall assess the estimated cost on the lands to be benefited; shall estimate and report the value of the lands taken for the improvement, the damages done by taking the same, and to whom they belong, and the estate of the owners therein, and shall file their report within ninety days after their appointment, of which the clerk shall give notice; and, unless within thirty days, one-half of the owners of the lands to be assessed shall remonstrate, the common council shall proceed to execute the improvements.

Subsequent to the date of this charter, an act was passed by the legislature, entitled "An act to authorize the construction of works for supplying Jersey City and places adjacent with pure and wholsome water." *Pamph. L.*, 1852, 419. By the 22d section of said act, it is provided that the said commissioners shall decide upon a plan for a general system of sewers for the whole district proposed to be supplied with water; and, if the plan shall be approved, no sewer shall thereafter be constructed, except in conformity with said plan, and under the superintendence of said commissioners. And, by a supplement to the last-mentioned act, approved March 16th, 1854, after reciting that the plan for the sewers had been made, and submitted to the mayor and common council of Jersey City, and by them approved, it is enacted that the

water commissioners of Jersey City are authorized and empowered to construct the sewers and drains described in the plan and report, with such changes and alterations as may be found convenient or necessary in the progress of the work, and at such times as the mayor and common council shall decide that the several parts are required for the benefit or convenience of the citizens or the promotion of the public health. And by the third section of the act it is enacted that when application shall be made to the mayor and common council of Jersey City to have a sewer constructed, the same *preliminary proceedings* shall be had in relation thereto as are now authorized and directed by the charter; and if the mayor and common council shall decide that the sewer ought to be constructed, they shall give notice, in writing, of such decision to the water commissioners, who shall thereupon proceed to construct such sewer, to conform in all essential particulars to the before-mentioned plan. By the 19th section of the last-mentioned act, all such parts of the charter as are inconsistent with the provisions of said act are repealed.

From these enactments it is plain that the general plan and system of sewerage has been settled; that council have no further concern with or control over the matter of construction or assessment than simply to decide that the sewer ought to be constructed, and to give notice thereof to the water commissioners, who are to construct the work according to the plan already settled, and to assess the costs according to the provisions of the act of 1844. The preliminary proceedings referred to in the third section of the act can only be those which precede the decision of council, that the work should be done. Those alone remain in force, as prescribed by the 55th section of the act of 1851. All the subsequent provisions of that section are repealed by the act of 1854. It is no objection, therefore, to the validity of these proceedings that they are not in accordance with the act of 1851. The

fact that council have attempted to act according to the provisions of a statute not in existence, cannot affect the validity of their proceedings. The only inquiry is, are they in accordance with the provisions of existing laws?

It is further objected that the proceedings are fatally defective, because the decision of council, that the sewer should be built, was not made by ordinance, but in the form of a resolution only. There is nothing in the charter that requires that the decision of the council should be made by ordinance —all that is required is that they should decide when the improvement should be made.

It is further objected that council did not decide, in the terms of the first section of the act of 1854, that the sewers directed to be constructed "are required for the benefit or convenience of the citizens or the promotion of the public health." The third section, which regulates the mode of proceeding, and which adopts the provisions of the city charter, simply requires that the council shall decide that the sewer ought to be constructed. The first section of the charter was not designed to regulate the mode of proceeding by council. When council decide that a sewer ought to be constructed, they virtually decide that it is required for the benefit or convenience of the citizens or the promotion of the public health.

It is lastly objected that the proceedings are erroneous, because council ordered the sewer to be extended beyond the limits for which it was originally applied. The sewer, as applied for, was the main sewer in South Fifth street, from the east side of Prospect street to Brunswick street, with certain lateral sewers connecting therewith. The original resolution of council ordered the sewer to be constructed as applied for. By a communication, subsequently made to council by the water commissioners, it appears that after the decision of council had been made, and before the work was constructed, a portion of South Fifth street had been filled up, rendering it necessary to extend the sewer one hundred feet further east than was

estimated, in order to complete it. Council thereupon ordered the water commissioners to extend the sewer as far as they might deem it necessary and expedient so to do, in accordance with the law governing the construction of sewers. The whole object of the extension was to complete the sewer, and render it available. It remained essentially the same work.

The proceedings should be affirmed.