The only ground alleged for opening the judgment was that neither the minor nor his next of kin was served with notice of the application to appoint the guardian ad litem.

The court discharged the rule.

*Error assigned* was the order of the court discharging the rule.

*Henry A. Hoefler*, with him *Charles A. Chase*, for appellant.

*Melick, Potter & Dechert*, for appellees, were not heard.

Per Curiam, May 11, 1908:

The motion to open a judgment being an appeal to the equitable powers of the court should be based on some equitable ground shown. In this case there was none. The judgment was regular on its face and not assailable at law. The only objection to it now set up is of technical irregularity not in any way affecting its merits or justice. The court was not called upon to intervene.

Judgment affirmed.

---

# Dobbins's Estate (No. 1).

*Wills—Codicils—Construction—Intestacy as to principal—Charities.*

Testator devised his residuary estate to his executors to pay the whole net income to his sister for life, and upon her death the principal to such charities as she should by will direct, and upon her failure to appoint, to pay the same to eight charities named. By another clause he directed that if the bequest to charitable institutions for any reason should not take effect, or be held to be void, then he gave all moneys intended to be given to charitable purposes to his sister and brother, or to the survivor of them to be divided between them and to be disposed of by them or the survivor of them in any manner which they may deem proper and useful. A codicil revoked the charitable provisions set forth in the will and gave pecuniary legacies to certain specified charities, and further directed that the residue of his estate directed to be held in trust for

the benefit of his sister should at her death be paid over to such charities as he should thereafter name in writing to his executors, or by provision in a future codicil, but if he should fail to make such designation then to pay over and distribute the same to such charitable institution or institutions as his sister should by will appoint. A subsequent codicil revoked the provision for the payment of the whole income to testator's sister, and directed his executors to pay her for life an amount per annum which was much less than the total income. After testator's death it appeared that he had failed to name in writing to the executors, or in a codicil, any charities as beneficiaries of the residue. *Held,* that the provision in the will in favor of the brother and sister, if the charitable bequests should fail, was not revoked by the codicils, and that no intestacy arose as to the corpus of the residuary estate.

Argued March 26, 1908. Appeal, No. 63, Jan. T., 1908, by Mary S. McMurtrie, Susan C. D. Stackhouse, Gertrude D. Hallowell, Molly D. Schaffer, Florence Dobbins Titus, Murrell Dobbins, Jr., Joseph T. Dobbins and Sarah L. Horner, from decree of O. C. Phila. Co., July T., 1906, No. 135, dismissing exceptions to adjudication in Estate of Edward T. Dobbins, deceased. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication of LAMORELLE, J.

The material portions of the will and codicil of the decedent were as follows:

WILL.

" Item 24. All the rest, residue and remainder of my property and estate of every nature and kind and wheresoever the same may be or be situated, or to which I shall be entitled at the time of my decease and not already hereinbefore disposed of, I give and devise and bequeath unto my executors and trustees hereinafter named and appointed and to the survivors or survivor of them IN TRUST nevertheless for the following uses and purposes and not otherwise. That is to say to invest such of my estate as shall come into their hands uninvested and keep the same and all the other property coming into their hands under this my Will invested and change the investment as often as the proper and beneficial management of my estate shall in their judgment require, and pay the income and interest thereof together with the rents of my real estate which I desire shall remain unsold so far as relates to that situate in

the City of Philadelphia, over to my said sister Mary A. Dobbins, in quarterly payments or oftener if she request it during the whole term of her natural life. And I request and direct my said executors and trustees to allow and permit my said sister Mary A. Dobbins to possess, occupy, use and enjoy as a place of residence for herself my dwelling house and premises No. 1808 Locust Street, Philadelphia, and also to have full use and possession and enjoyment of my stable and premises No. 1919 Ann Street, Philadelphia, both free of rent and of every other charge during her life, or so long as she shall desire to have and use them or either of them.

" Item 27. At and immediately after the death of my said sister Mary A. Dobbins or at any time during her life if she should so request, I do hereby authorize and empower my said executors and trustees to sell and dispose of all or any part of my real estate and to give good and sufficient deed or deeds or other assurances in the law to the purchaser or purchasers thereof, without any liability on the part of the purchaser or purchasers to see to the proper application of the purchase money and I direct them to pay over all the rest, residue and remainder of my said estate to and among such charitable institutions as my said sister Mary A. Dobbins by her last Will and testament shall direct and appoint, and in default of such direction and appointment, then to pay over the said rest, residue and remainder to the following charitable institutions :—To ;

" The Burlington County Hospital, Mount Holly, New Jersey.

" The Bethesda Home, Located at Chestnut Hill, Philadelphia.

" The Lying in Charity Hospital and Nurses Home, located Cor. 11th & Cherry Streets, Philadelphia.

" The Blind Men's Home, 3518 Lancaster Avenue, West Philadelphia.

" The Episcopal Hospital, Philadelphia.

" The Howard Hospital, located on Broad Street, Philadelphia.

" The Southern Home for Destitute Children, Broad & Morris Streets, Philadelphia.

" The House of Rest, Germantown, Philadelphia.

dividing the said rest, residue and remainder equally among the said above named institutions or she shall add to the list any other charities that she may deem worthy and desires to be benefited by my estate.

"Item 28. Should my said foregoing bequests to charitable institutions for any reason not take effect or be held to be void, then I give and bequeath all moneys intended by this my said will to be given to charitable purposes to my sister Mary A. Dobbins and my brother Murrell Dobbins or to the survivor of them to be divided equally between them and to be disposed of by them or the survivor of them in any manner that they may deem proper and useful.

## "CODICIL 1.

"1st. I hereby revoke and annul Item 27 of my said will and all the provisions thereof as contained on page eight of the said will.

"16. After the death of my sister, Mary A. Dobbins, I order and direct that all the rest, residue and remainder of my estate, which under the terms of Item 24 of my will shall have been held by them in trust for the benefit of the said Mary A. Dobbins during her lifetime shall be held by my said executors and trustees and the survivor or survivors of them upon the further trust to pay over and distribute the said rest, residue and remainder of my estate to such charitable institution or institutions or to such charitable purpose or purposes as I shall hereafter designate by instructions in writing addressed to my said executors or by provision in a future codicil to my will, but if I shall fail to make such designation, then to pay over and distribute the same to such charitable institution or institutions as my sister, Mary A. Dobbins, shall by her last will and testament direct and appoint.

## "CODICIL 2.

"8. I hereby revoke and annul Item 24 of my said will and in place thereof I give, devise and bequeath all the rest, residue and remainder of my property and estate, of every nature and kind whatsoever and wheresoever situate, or to which I shall be entitled at the time of my decease, and not already hereinbefore or by my said will or other codicils thereto dis-

posed of, unto my executors and trustees, and to the survivors or survivor of them, in trust, nevertheless, for the following uses and purposes, that is to say :

" To invest the same and keep the same invested, changing the investments as often as the proper and beneficial management of my estate shall in their judgment require; to collect the income therefrom, and after the payment of all lawful charges and expenses thereof, to pay out of the net income to my sister, Mary A. Dobbins, the sum of $2,000 per month during the whole term of her natural life, and I direct my executors and trustees to allow and permit my said sister, Mary A. Dobbins, to possess, occupy, use and enjoy as a place of residence for herself my dwelling house and premises, No. 1808 Locust street, Philadelphia, and also my stable and premises, No. 1919 Manning street, Philadelphia, both free of rent and of every other charge during her life or so long as she shall desire to have and use them or either of them."

The auditing judge held that there was an intestacy as to the surplus income in excess of the annuity, and directed it to be distributed by the trustees amongst the distributees under the intestate law. He held that there was no present intestacy as to the principal of the estate, which he held to be subject to the testamentary appointment of Mary A. Dobbins under the sixteenth clause of the first codicil.

The heirs at law filed exceptions to the action of the auditing judge in holding that there was no intestacy as to the principal.

Mary A. Dobbins and Murrell Dobbins, brother and sister of the decedent, filed exceptions to the action of the auditing judge in holding that there was an intestacy as to the surplus income.

PENROSE, J., filed the following opinion :

The record does not show who the parties are who would take under the intestate laws if there should be an intestacy, and, as we are without information on the subject, we do not know the extent of the interest of those who have excepted to the refusal of the auditing judge to award distribution of any part of the principal of the residuary estate. We think, however, that his action in this respect was clearly right.

By his will, executed November, 1894, the testator, after numerous pecuniary and specific legacies, contained in twenty-two items, separately numbered, to relatives and to designated charities, gave the residue of his estate " of every nature and kind and wherever same may be " to his executors in trust to pay the income, interest and rents to his sister Mary, " during the whole term of her natural life," further directing, by Item 27 (the direction to pay the income to the sister being contained in item twenty-four), that at her death the trustees, after sale of real estate, shall " pay over all the rest, residue and remainder " of such residuary estate " to and among such charitable institutions " as she shall, by will, direct and appoint, and in default of such appointment to ten charitable institutions there named, viz. : The Burlington County Hospital, The Bethesda Home, The Lying in Charity Hospital, The Blind Men's Home, The Episcopal Hospital, The Howard Hospital, The Southern Home for Destitute Children, and The House of Rest ; " dividing the said . . . . residue . . . . equally among said . . . . institutions, or she shall add to the list any other charities that she may deem worthy."

Immediately after this disposition of the residuary estate, the will, by Item 28, provided as follows : " Should my said foregoing bequests to charitable institutions, for any reason, not take effect or be held to be void, then I give and bequeath all moneys intended by this my said will to be given to charitable purposes to my sister Mary A. Dobbins and my brother Murrell Dobbins or to the survivor of them to be divided between them and to be disposed of by them or the survivor of them in any manner that they may deem proper and useful."

Six years later, by a codicil dated July 20, 1900, he revoked and annulled " Item 27 " of his will " and all the provisions thereof," and after giving pecuniary legacies to twelve charitable institutions, including some of those mentioned in Item 27 as residuary legatees, and providing that if his nephew, T. Monroe Dobbins, or his niece, Laura E. Dobbins, should die without issue the $30,000 and $25,000 given to them, respectively, by Items 15 and 17 of his will, should be paid to their " father and mother . . . . or the survivor," he directed that at the death of his sister Mary " all the rest, residue, and remainder," held " under the terms of Item 24," in trust for her

benefit, for life, shall be held in trust " to pay over and distribute . . . . to such charitable institution or institutions or to such charitable purpose or purposes as I shall hereafter designate by instrument in writing addressed to my said executors or by provision in a future codicil to my will; but if I should fail to make such designation then to pay over and distribute the same to such charitable institution or institutions as my said sister . . . . shall by her last will . . . . direct and appoint."

Other codicils (April 5, 1902, July 27, 1904, July, 1905, and July 7, 1905), revoked, by referring to names of legatees and number of items, Items 17, 3, 9, 11, 14, 24, 13, 5 and 18, and gave additional legacies, charitable and otherwise, as there set forth; the codicil of July 27, 1904, Item 8, being as follows : " I hereby revoke and annul Item 24 of my said will and in place thereof I give . . . . all the rest, residue, and remainder of my property . . . . of every kind . . . . and not already . . . . by my said will or codicils disposed of unto my executors and trustees . . . . in trust . . . . to invest the same . . . . to collect the income therefrom, and to pay out of the net income to my sister Mary A. Dobbins . . . . $2000 per month during the whole term of her natural life," —she to have the right to occupy free of rent and of every other charge his residence and stable and the executors and trustees to have power to sell all his other real estate " at such time and upon such terms as to them shall seem best."

Under the will, as originally drawn, an intestacy was impossible. The charitable institutions designated as residuary legatees " in default of appointment " by the sister, took vested interests, subject to be divested by the exercise of the power : Doe v. Martin, 4 Term Rep. 39 ; 4 Kent, 204, 324 ; Brooke's Estate, 214 Pa. 46, 47 ; and if the testator should die within a calendar month after its execution, the sister and brother would take under Item 28, with no restriction on their right of disposal, but with the evident belief on the part of the testator that they would carry out his wishes.

A codicil, as it is well settled, is to be interpreted in the light of the will, which it changes only to the extent that the original provisions are thus altered ; everything else remains just as it was, and this is the case even if the codicil professes to

" revoke and annul" that which it actually only modifies:
Watt's Estate, 3 Pa. Dist. Rep. 343; Sloan's Appeal, 168
Pa. 422; Whelen's Estate, 175 Pa. 23; Cooper v. Day, 3
Merivale, 154; Leacroft v. Maynard, 3 Bro. C. C. 233, etc.
The codicil becomes part of the will, with like effect as if it
had been incorporated in it.

A principle of no less importance is that a codicil repub-
lishes the will and all previous codicils—regarded as forming
part of it; and all that at the time of such republication has
been retained is, necessarily, to be treated as taking effect as
of the date of such republication. From this it results that
Item 28, giving the residuary estate to the brother and sister
in the event of failure of the charitable gifts, which was never
revoked, is to be read in the light of the codicil which reduced
the gift of income to the cestui que trust for life and of the
codicils which followed. The retention of this item, especially
in view of the revocation of so many other items, is very sig-
nificant, and there is no right to disregard it or to say that
its operation is to be confined to the terms of the will as it
originally stood. See Sherer v. Bishop, 4 Bro. C. C. 55.

Obviously the provision became of more importance by rea-
son of the first codicil than it had been previously, for not only
was there danger of failure of the pecuniary legacies to chari-
ties, newly created by the codicil, by the death of the testator
within a calendar month after its execution, but the vested re-
siduary gifts to charities being revoked, there was danger that
the intention with regard to charitable disposition of the res-
idue might fail by reason of the omission of the testator to
designate the special object " by instructions in writing . . . .
or by provision in a future codicil," and the further danger
that the sister might die without having exercised her power
of selection. Hence Item 28 was retained, the provisions of
the codicil, substituted in place of the items revoked or modi-
fied being incorporated in the will in place of Item 27, etc.,
which preceded it, and thus falling within its terms.

This was the case, also, after the modification by the later
codicil of the estate of the cestui que trust for life by the re-
duction of her share of income to $24,000 per annum, but with
no suggestion that Item 28 of the will had been revoked or in
any way abrogated.

There was no revocation of the power of selection given to the sister. It was unaffected by the abridgment of her interest in the income of the residuary estate, and would have continued as a power in gross if her right to income had been taken away altogether. Whether she will exercise her power or not cannot be known until her death, and in the meantime, as the auditing judge has held, the principal of the estate cannot be distributed. The exceptions to this ruling are dismissed.

The codicil having reduced the amount to be paid to the sister to $24,000 per annum, there is, and while she lives, will be, a large surplus of income. If the charities ultimately intended to take the principal of the residuary estate were designated by the will, this surplus would accumulate for their benefit, the act of assembly restraining accumulations to the case of an existing minority and for the benefit of the minor, expressly declaring that its provisions shall not extend to charities. But this exception from the operation of the statute manifestly cannot apply where there is no charitable object having a vested, or, at least, a contingent interest at the time the accumulations occur, and especially where, as in the present case, such object may never come into existence at all. Under these circumstances there would be an intestacy as to the surplus income, as the auditing judge has held there is, unless it is prevented by the provisions of Item 28 of the will, republished by this codicil and those which come after it.

The intention of the testator as manifested, both by the will and the codicils, was that his residuary estate should go, either by his own designation or by the selection of his sister, to charitable institutions; and he knew, for such is the law which all are presumed to know, that accumulation, either by express provision or by indirection, was not forbidden in case of charitable gifts. He did not know that the court would hold that the statute would apply as against an unknown and unascertainable charity. This, however, did not affect his intention, and thus is presented the very case contemplated by Item 28 of the republished will: " Should my said foregoing bequests to charitable institutions for any reason not take effect or be held to be void, then I give and bequeath all moneys intended by this my said will to be given to charitable purposes to my sister, Mary A. Dobbins, and my brother, Murrell Dobbins, or

to the survivor of them, to be divided equally between them, and to be disposed of by them, or the survivor of them, in any manner that they may deem proper and right." "Moneys intended" for charities are, if the charitable intention should be held ineffective, covered by this item, and the "intention" may be manifested by implication no less than by express provision.

It is true that "the heir will not be disinherited except by express words or necessary implication," but where the will shows unequivocally, as it does in this case, that he has been excluded, the principle has little application where the claim by the heir is based upon a codicil: Norris's Estate, 217 Pa. 560 ; 15 Pa. Dist. Rep. 449. The right to dispose of his property by will is conferred upon the owner by a statute no less explicit in its terms than is that which provides for its disposition where there is no will, and the very purpose of a will is to prevent the operation of the intestate laws. An intestacy will never be permitted where by any fair interpretation of the will, or any reasonable understanding of its language, it can be avoided. An intestacy can seldom, if ever, take place where there is a gift of the residue, for such gift will, in general, take in whatever is not well disposed of. Here there is a double disposition of the residue ; first, to charities to be defined in the future, and, second, if they should fail, to the brother and sister.

This view is concurred in by President Judge ASHMAN, but as the other two judges before whom the case was argued agree with the auditing judge, the exceptions on the part of the brother and sister must also be dismissed, though by a divided court.

The exceptions are dismissed and the adjudication confirmed absolutely.

ANDERSON and LAMORELLE, JJ., filed opinions concurring in the adjudication as to the income.

*Errors assigned* were in dismissing exceptions to adjudication.

*N. Dubois Miller* and *Harman Yerkes*, with them *John Faber Miller*, *Carroll R. Williams* and *Nicholas H. Larzelere*, for appellants.—Item 28 of the original will has no application

whatever as the will and codicils now stand: Arthur v. Cumming, 91 U. S. 362. The 16th clause of the first codicil fell with the revocation of Item 28 of the will. The case presented here is a clear case of partial intestacy under the decisions of this court: Hitchcock v. Hitchcock, 35 Pa. 393; Bruckman's Est., 195 Pa. 363; Lipman's App., 30 Pa. 180; DeSilver's Est., 142 Pa. 74; Gray's Est., 147 Pa. 67; Schmidth's Est., 183 Pa. 641; Nebinger's Est., 185 Pa. 399; Filbert's Est., 195 Pa. 295; Corr's Est., 202 Pa. 391; Espy's Est., 207 Pa. 459; Shaner v. Wilson, 207 Pa. 550.

*John G. Johnson,* for appellee.

PER CURIAM, May 11, 1908:

This appeal is dismissed for reasons appearing in the opinion of PENROSE, J., in the court below.

---

# Dobbins's Estate (No. 2).

*Wills—Codicils—Construction—Intestacy as to principal—Charities.*

Testator devised his residuary estate to his executors to pay the whole net income to his sister for life, and upon her death the principal to such charities as she should by will direct, and upon her failure to appoint, to pay the same to eight charities named. By another clause he directed that if the bequest to charitable institutions for any reason should not take effect, or be held to be void, then he gave all moneys intended to be given to charitable purposes to his sister and brother, or to the survivor of them to be divided between them and to be disposed of by them or the survivor of them in any manner which they may deem proper and useful. A codicil revoked the charitable provisions set forth in the will and gave pecuniary legacies to certain specified charities, and further directed that the residue of his estate directed to be held in trust for the benefit of his sister should at her death be paid over to such charities as he should thereafter name in writing to his executors, or by provision in a future codicil, but if he should fail to make such designation then to pay over and distribute the same to such charitable institution or institutions as his sister should by will appoint. A subsequent codicil revoked the provision for the payment of the whole income to testator's sister, and directed his executors to pay her for life an amount per annum