AMERICAN GROCERY COMPANY, PROSECUTOR, v. BOARD OF COMMISSIONERS OF THE CITY OF NEW BRUNS-WICK, RESPONDENT.

Argued January 17, 1940—Decided March 14, 1940.

Before Justices BODINE and PERSKIE.

For the prosecutor, *Morris H. Cohn* and *Samuel Rosenthal.*

For the respondent, *Paul W. Ewing.*

The opinion of the court was delivered by

PERSKIE, J.  The sole question to be decided in this cause is whether an ordinance passed by the city of New Brunswick on April 12th, 1938, amending an ordinance passed on December 5th, 1933, is valid?  Our answer is in the affirmative.

Both the original and the amending ordinance are before us.  The original ordinance prohibits any "person, firm, partnership or corporation" from engaging "in the business of operating, conducting or maintaining a food market within any building or structure within the limits of the city of New Brunswick, and renting or leasing more than four concessions in any such building or structure to persons, natural or artificial to carry on various kinds and types of businesses therein without first having obtained a license therefor."  A license fee is imposed under this ordinance, allegedly for revenue purposes, of $200 a year for each concession.  The ordinance, of course, contains other provisions but these are not here involved.

The amending ordinance, so far as is here pertinent, is identical with the original ordinance except that it reduces the renting or leasing of more than "four concessions" to "more than two concessions" and raises the license fee from $200 to $500 for each concession. This ordinance likewise contains a provision that the license fee is "for the purpose of revenue." Notwithstanding the fact that both ordinances are before us, it is the amending ordinance that is here involved.

Prosecutor is a corporation of this state operating a food market within the purview of the challenged ordinance. It commenced business the latter part of November, 1937, at New Brunswick, New Jersey. It leased the entire building. It operates the grocery department which occupies about one-half of the building. In 1938 it sublet the remaining space of that building to eight tenants and in 1939 to seven tenants. Each tenant may be said to be a concessionaire. With the exception of the concessionaires who deal in dry goods and shoe repairing, the remaining concessionaires deal in food products. Each concessionaire pays prosecutor a rental ranging from five to twelve per cent. of his gross receipts, and each additionally pays the license fee imposed under the ordinance to prosecutor which, in the first instance, pays the license fee for all leased concessions to the city of New Brunswick.

Pursuant to the ordinance to which prosecutor only is presently subject, it became liable and did pay, under protest, the license fee imposed.

That the city of New Brunswick may "license" the type of business here licensed (*R. S.* 40:52-1), and "fix the fee" for said business as a "revenue" measure cannot be gainsaid. *R. S.* 40:52-2. Generally stated, the exaction of a license fee for revenue purposes from those who operate a "food market where general merchandise is sold is not unreasonable, arbitrary or discriminatory." Compare, *Giant Tiger Corp.* v. *Board of Commissioners of Trenton,* 11 *N. J. Mis. R.* 797, 799; 168 *Atl. Rep.* 309; *affirmed,* 113 *N. J. L.* 34; 172 *Atl. Rep.* 565, which involved four concessions and a fee of $100 for each concession, and *Giant Tiger Corporation, Cam-*

*den, New Jersey,* v. *Camden,* 122 *N. J. L.* 240, 248, 249; 4 *Atl. Rep.* (*2d*) 775, which involved four concessions and a fee of $200 for each concession, and *Hoffman* v. *Mayor, &c., South River,* 13 *N. J. Mis. R.* 618; 180 *Atl. Rep.* 394, which also involved four concessions and a fee of $200 for each concession, with certain exceptions not here involved.

But as we have seen, the amended ordinance in the case at bar goes further than any of the ordinances in the cited cases which have heretofore received our consideration and determination. It draws the line at the renting or leasing of more than two concessions and increases the fee of each concession from $200 to $500. With these differences in mind, let us consider the attack which is here made both upon the line so drawn and the increase of the fee.

1. Is the drawing of the line at "more than two concessions" unreasonable?

It is altogether settled by the South River, Trenton and Camden cases, *ubi supra,* that a separate classification of food markets where general merchandise is sold is proper. It is equally well settled by these cases that the drawing of a line at the number of concessions is purely a legislative function. In light of these settled principles if it is reasonable for the municipal legislative body to draw the line at more than "four concessions" which means five or more, nothing is made to appear that would justify us in saying that the line drawn at more than two concessions, which means three or more, is unreasonable. Every reason in support of the reasonableness as to the line drawn in the former class applies with equal force and justice as to the line so drawn in the latter class. Cf. Camden case, *ubi supra* (at *p.* 249).

In support of the unreasonableness at the drawing of the line at "more than two concessions," it is suggested that the passage of the ordinance was motivated by bad faith, for ulterior motives. That suggestion is rested upon the premise that the amending ordinance was not in fact passed as a revenue measure but rather to satisfy the local retail merchants who, fearing the competition, appeared as a body with their counsel and urged its passage. In other words, bad faith—ulterior motives—are charged against both those who urged

the passage of the ordinance and against the city fathers who claimed that it was a necessary revenue measure.

Neither personal interest, fraud or corruption on the part of the commissioners is intimated or charged. Under those circumstances, it is well settled that when city commissioners, as here, perform a legislative function their motive for passing an ordinance cannot affect its validity. *Cf. Moore* v. *Haddonfield*, 62 *N. J. L.* 386; 41 *Atl. Rep.* 946; *Frelinghuysen* v. *Morristown*, 76 *N. J. L.* 271, 274, 280; 70 *Atl. Rep.* 727; 43 *C. J.* 297, § 312; 19 *R. C. L.* 898, § 197, and *p.* 904, § 203. It is the end result that is controlling. And that result must be supported by proper exercise of power.

2. Is the amended ordinance otherwise unreasonable, oppressive or confiscatory and thus in excess of power?

There are always the presumptions in favor of the validity and reasonableness of a properly enacted ordinance. Reasonableness, however, is a fact question. The burden of proof is upon the one who attacks the ordinance to show its unreasonableness. Courts do not interfere unless it be shown that the ordinance either upon "the face of its provisions" or by reason of its "operation in the circumstances under which it is to take effect is unreasonable or oppressive." *Wagman* v. *Trenton*, 102 *N. J. L.* 492, 493, 494; 134 *Atl. Rep.* 115; *Giant Tiger Corp.* v. *Board of Commissioners of Trenton*, *supra* (at *p.* 798). (S. C.)

The answer to this branch of the argument depends upon the proofs. Let us briefly examine them.

For the year of 1938, prosecutor's gross receipts were as follows: sales from its grocery department, $254,904.80; rental from its concessionaires, $16,506.57, total, $271,411.37. The total receipts from all other concessions were $259,954.21, or a grand total of $531,365.58. The total receipts for the first half of 1939 were $143,488.76. The license fees for 1938 were $4,000 and $3,500 for 1939. Based upon these figures and the profits of similar markets (1.03 per cent. to 1.07 per cent.) prosecutor argues that its profits for the year of 1938 should have been between $2,625.52 and $4,333.38 while in fact it sustained a loss of $3,261.23; that for the first half of 1939, its profits should have been between

$1,477.93 and $2,240.30, while in fact it claims to have sustained a loss of $820. It, however, concedes that if it is reimbursed by its concessionaires their share ($2,000) of the license fee, the claimed loss of $820 may turn into a profit for the period.

From the mere circumstances that other food markets on a comparable volume of business and standard of profit, earned a profit while prosecutor sustained a loss during the first full year of its operations, does not flow the urged conclusion that prosecutor's loss was chargeable solely to the license fee exacted. Obviously, there are many other and varied factors which may contribute to the successful or unsuccessful operation of a business. We are unwilling on the meager proofs before us to say that prosecutor's loss is chargeable to the license fee exacted. Moreover, if we resort to the same method of calculation employed by analogy in the Camden case, *ubi supra* (see *pp.* 246-247), the license fee here imposed amounts to practically three-quarters of one per cent. of the total sales; and if each concession be considered separately, the fee is slightly in excess of one and one-half per cent. of the gross sales of each department. On the basis thus computed, and in view of all other circumstances of the case at bar, the license fee is clearly neither unreasonable, oppressive or confiscatory. It trenches upon no state nor federal constitutional rights of prosecutor. *Giant Tiger Corporation, Camden, New Jersey,* v. *Camden, supra* (at *p.* 248).

The writ is dismissed, with costs.