6 N.J. Super. 333 (1950)
71 A.2d 220
HUDSON & MANHATTAN RAILROAD COMPANY ET AL., APPELLANTS,
v.
CITY OF JERSEY CITY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1950.
Decided February 8, 1950.
*335 Before Judges JACOBS, DONGES and BIGELOW.
Mr. John Warren argued the cause for the appellants.
Mr. Thomas J. Brogan argued the cause for the respondent.
*336 The opinion of the court was delivered by JACOBS, S.J.A.D.
The appellants in this proceeding seek to set aside, as discriminatory and invalid, resolutions of the Board of Commissioners of Jersey City relating to tax appeals by the City from assessments which had been revised by the County Board of Taxation.
In 1943, after the Hudson County Board of Taxation had reduced assessments on 80% of the real estate in Jersey City, 34,431 tax appeals filed by the City were dismissed by the County Board for lack of jurisdiction and were prosecuted further to the State Board of Tax Appeals. In 1944, 24,514 appeals taken by the City were similarly dismissed by the County Board and prosecuted to the State Board. In 1945, 12,000 appeals were taken to the County Board. In September, 1945, the County Board dismissed the City's 1945 appeals and the State Board sustained the County Board's ruling that it was without jurisdiction of the 1943 and 1944 appeals. See In re Jersey City, 23 N.J. Misc. 311 (Dep't of Tax. & Fin. 1945).
The City was then confronted with the issue of whether it should proceed with all of its appeals or whether a more satisfactory policy might be evolved which would fairly and in substantial measure protect the City's position while avoiding the problems incident to the prosecution of over 70,000 separate appeals. Between September and November 20, 1945, Commissioner Potterton held conferences on the subject with representatives of the municipal Law Department and Tax Board, realty experts and others and, as a result, certain working policies were developed. The appeals were to be abandoned except with respect to 876 properties which were believed to fall within four major groupings. The first may be described as those within the "Journal Square area." This area is one of the most valuable in the City and contains many high rental properties. The second may be described as properties containing buildings or other improvements assessed by the City in excess of $50,000 which were separately grouped, according to Commissioner Potterton, because they had generally "been so materially reduced" by the County Board. *337 The third was locally assessed railroad property adjacent to or near railroad property assessed by the State. This property was included in view of the then long standing controversy between the City and the railroads relating to the extensive State-assessed railroad property within the City's borders (see State v. State Board of Tax Appeals, 134 N.J.L. 34 (Sup. Ct. 1946); affirmed, 135 N.J.L. 481, 482 (E. & A. 1947)), and the expressed belief that if the County Tax Board's reductions were permitted to stand they would result not only in local assessments below true value but "might have a bearing" on the State-assessed railroad property. The fourth was a group of industrial properties near the locally assessed railroad properties. These were apparently included because of their physical relation to the locally assessed railroad properties and in the belief that they were part of a "solidly industrial" area which had been improperly reduced by the County Board.
In addition to the four major groupings there were subordinate policies. Thus, pursuant to a recommendation of the Law Department, property was to be excluded generally where it appeared that the County Board's action did not reduce the assessment below that fixed by a prior judgment of the State Board of Tax Appeals. Where an appeal was being taken with respect to property in the group having buildings or improvements assessed over $50,000, the appeal was to include land as well as buildings; there was testimony that the Law Department had advised that this be done to facilitate the introduction of expert valuation testimony.
While the foregoing was being evolved Commissioner Potterton conferred from time to time with the other City Commissioners and, although they may not have known all of the details, they were sufficiently acquainted with the major groupings and the reasons therefor. Under date of November 15, 1945, Commissioner Potterton addressed a letter to the Board of Commissioners which stated that he had been engaged in an intensive study and investigation of the subject and was recommending the further prosecution of appeals with respect to the properties set forth on a list enclosed in his letter. His *338 letter pointed out that the list, which contained the 876 properties, did not include "the properties of any home owner or small property owner." On November 20, 1945, the Board of Commissioners adopted a resolution which authorized Commissioner Potterton, as Director of the Department of Revenue and Finance, to appeal to the Division of Tax Appeals from the County Board's dismissals of the City's 1945 appeals relating to these properties. On December 18, 1945, a further resolution was adopted authorizing judicial review of the State Board's dismissal of the 1943 and 1944 appeals insofar as the 876 properties were concerned, and by resolutions dated August 6, 1946, and July 15, 1947, the City authorized appeals from the 1946 and 1947 assessments with respect to 842 of the properties. Writs of certiorari were issued by the former Supreme Court to review the validity of the resolutions (Hudson and Manhattan Railroad Co. v. Jersey City, 134 N.J.L. 442 (Sup. Ct. 1946)), and the appellants in this proceeding are before this Court pursuant thereto.
In Jersey City v. Division of Tax Appeals, 5 N.J. Super. 375 (App. Div. 1949), this Court held that the tax appeals by the City of Jersey City were improperly dismissed and, under that decision, the City may proceed with its appeals and obtain determinations on the merits. We were advised at the argument that the 876 appeals are being steadily reduced by settlements which, thus far, aggregate approximately 475. In the course of each of the City's tax appeals, the individual taxpayer will have the right to assert such material defenses as pertain to his particular assessment. See Jersey City v. Division of Tax Appeals, supra, at p. 384. In this connection it may be noted that the new Rules contemplate that generally the record before the administrative agency will be complete and include evidence on all issues which the appellant may ultimately seek to have determined on judicial review. See Rules 3:81-8; 3:81-9. Cf. Central R.R. Co. of N.J. v. State Tax Department, 112 N.J.L. 5, 16 (E. & A. 1933). In the light of the foregoing we believe that in this proceeding by the appellants, seeking to set aside in toto the resolutions of the City authorizing prosecution of the 876 *339 appeals, we do not have properly before us considerations which pertain solely to particular properties, such as the individual errors which admittedly crept in during the preparation of the list of 876 properties. They are not sufficient to indicate any bad faith or corrupt design in the working out of the City's policies; on the contrary, they appear to have been the result of the magnitude of the task and the limited time available. Without determining points which may, perhaps, be raised during the course of any individual appeal because of facts peculiarly applicable to the assessment there involved, we shall here pass upon the issue of whether the City's resolutions authorizing the legal proceedings should be set aside because they were discriminatory or otherwise invalid.
The appellants' primary contention is that the City's action in prosecuting the 876 appeals and abandoning the rest, constituted the deliberate making of non-uniform assessments in violation of Article IV, Section VII, paragraph 12 of the 1844 Constitution and the equal protection clause of the Fourteenth Amendment of the United States Constitution. The State constitutional provision referred to simply provides that "Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value." It seems clear that this clause was not in any sense violated by the City's action. The appellants do not dispute that the assessments throughout the City, as originally made by the Assessor and revised by the County Board, were presumptively uniform and according to true value in compliance with the constitutional mandate. See Jersey City v. Division of Tax Appeals, supra, at p. 384. They constituted the sole assessment action within the contemplation of the constitutional provision. The fact that, in many individual cases, appeals were taken by the City and might require assessment changes, was simply an incident of fair and orderly taxing procedure and did not impugn the integrity of the assessing action under the Constitution. Cf. White River Lumber Co. v. Arkansas, 279 U.S. 692, 696, 73 L.Ed. 903, 909 (1929). However, the appellants seek support from the line of cases in the United States Supreme Court which have struck down *340 systematic and intentional discriminations in the valuation of property in the same class for tax assessment purposes. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 67 L.Ed. 340 (1923); Hillsboro Township v. Cromwell, 326 U.S. 620, 90 L.Ed. 358 (1946).
The appellants have not introduced any valuation testimony as to their own properties or the relation of assessments on their properties to other assessments throughout the City and are in no position to assert taxation which "in fact" bears unequally. See Charleston Federal Savings and Loan Ass'n. v. Alderson, 324 U.S. 182, 190, 89 L.Ed. 857, 863 (1945). Instead, they contend that the mere prosecution of appeal litigation which might, if successful, result in assessments against them at true value while other property owners are not subjected to similar litigation, constitutes discriminatory action violating the equal protection clause. The decisions of the United States Supreme Court do not support them. See Winona & St. Peter Land Co. v. Minnesota, 159 U.S. 526, 539, 40 L.Ed. 247, 252 (1895); Florida C. & P.R. Co. v. Reynolds, 183 U.S. 471, 480, 46 L.Ed. 283, 287 (1902); Fort Smith Lumber Co. v. Arkansas, 251 U.S. 532, 534, 64 L.Ed. 396, 399 (1920); White River Lumber Co. v. Arkansas, supra. In the Winona case the Court sustained a State act which provided for the collection of back taxes on real but not on personal property; in the Reynolds case the Court sustained legislation which provided for the collection of delinquent taxes from railroads but made no provision for the collection of delinquent taxes on other properties; in the Arkansas cases the Court upheld the propriety of legal proceedings for the collection of back taxes against corporations where the State statutes made no provision for similar action against individuals. In the course of his opinion in the Reynolds case, Mr. Justice Brewer made the following observation which might perhaps be applied to Jersey City's prosecution of its appeals against the groups constituting the 876 cases while abandoning similar action against others:
"It may have found that the railroad delinquent tax was large, and the delinquent tax on other property was small, and not worth *341 the trouble of special provision therefor. If taxes are to be regarded as mere debts, then the effort of the state to coilect from one debtor is not prejudiced by its failure to make like effort to collect from another. And if regarded in the truer light as a contribution to the support of government, then it does not lie in the mouth of one called upon to make his contribution to complain that some other person has not been coerced into a like contribution."
See also Old Colony R. Co. v. Assessors of Boston, 309 Mass. 439, 35 N.E.2d 246 (Sup. Jud. Ct. 1941), where the Court, in sustaining a prepayment requirement pending appeal, applicable solely in cases where the tax was more than $1,000, pointed out that the "importance of the payment of a tax to the City may to some degree depend upon its amount, and the difference to the public treasury between the failure of a large taxpayer and that of a small one to pay his taxes may not be illusory."
Even when dealing with the original levy or assessment of the tax, the United States Supreme Court has upheld the constitutionality of classifications which distinguished between large and small taxpayers. See Carmichael v. Southern Coal and Coke Co., 301 U.S. 495, 511, 81 L.Ed. 1245, 1254 (1937), where Mr. Justice Stone pointed out that "administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others."
R.S. 54:3-21 afforded broad legislative authority to the City to appeal in any one or more instances where it considered that the assessment, as revised by the County Board, was below true value. See Jersey City v. Division of Tax Appeals, supra. When confronted with the practical problems incident to the maintenance of over 70,000 appeals it was not, as appellants suggest, left with the alternative of dropping all or prosecuting all. No sound reason has been advanced for prohibiting it from seeking, in the fair and honest exercise of its judgment, to protect its ratables and vindicate its position by prosecuting appeals in situations where it had most at stake while, at the same time, abandoning its appeals in the greater mass of cases where the inconvenience and expense *342 might well far outweigh the possible gain. The City is entitled to the benefit of the presumption that its action was taken in good faith and in the public interest and nothing in the testimony has established the contrary. We are satisfied that the appellants' primary contention that the City's resolutions constituted discriminatory action in violation of provisions of the Federal and State Constitutions is without merit.
Several subordinate points have been urged by the appellants and may be considered briefly. They assert that the standards used in compiling the list of 876 appeals were vague and uncertain and that the Board of Commissioners improperly delegated its preparation to subordinate employees who did not conform strictly to the standards. This contention disregards the fact that the Commissioners made the determination that the 876 appeals set forth in the list submitted by Commissioner Potterton should be prosecuted. True, the preliminary steps resulting in the preparation of the list were taken by subordinate employees; it could hardly have been otherwise. If government is to go on, municipal officials, acting in good faith, must have the authority to fix general policies, delegate to subordinates the working out of details, and make their ultimate official determinations on the basis of the reliability of reports submitted by the subordinates. Cf. City of Burlington v. Dennison, 42 N.J.L. 165, 167 (E. & A. 1880). It seems clear that, although the later discovery of any errors in the reports may perhaps lead to corrective steps, it should not ordinarily be permitted to impair the validity of the original action.
The appellants contend that the City's resolutions were quasi-judicial and were void because they did not, on their face, embody any "jurisdictional facts." We do not consider the taking of an appeal to be a "quasi-judicial" act within the generally accepted meaning of that term. Cf. Central Home Trust Co. v. Gough, 5 N.J. Super. 295, 299 (App. Div. 1949). The statute under which the City appealed (R.S. 54:3-21) prescribes no formal requirements and we see no reason to question the sufficiency of the City's resolutions which embodied *343 the Board of Commissioners' determination that the appeals be taken and its direction for their prosecution. Cf. State v. Jersey City, 27 N.J.L. 493, 498 (Sup. Ct. 1859).
Appellants assert that the City's action in prosecuting the 876 appeals and abandoning the rest was in violation of the provisions of the 1844 Constitution which prohibit the taking of private property for public use without just compensation (Article I, paragraph 16) and the donation of public funds (Article I, paragraphs 19 and 20). We consider the cited provisions to be entirely inapplicable, both in terms and purpose, to the City's exercise of its judgment as to what litigation should be prosecuted further for the protection of the City's interests. Cf. State, Brittin v. Blake, 36 N.J.L. 442, 447 (E. & A. 1872); Jersey City v. Kelly, 134 N.J.L. 239, 245 (E. & A. 1946). In addition, the appellants would seem to be in no position to complain in this proceeding about alleged donations to others.
Finally, the appellants urge that the Commissioners were not aware that the list did not in all respects comply with their policies and would not have voted for the resolutions if they had known that fact. The Board of Commissioners, by formal resolutions, expressly approved the prosecution of the 876 appeals and, for purposes of this proceeding, the alleged thought processes of the individual Commissioners would not appear to have any legal significance. Cf. American Grocery Co. v. Board of Commissioners of New Brunswick, 124 N.J.L. 293, 297 (Sup. Ct. 1940); affirmed, 126 N.J.L. 367 (E. & A. 1941).
The writs are dismissed.