# TAX COURT OF NEW JERSEY



**JOSHUA D. NOVIN**
**Judge**

Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

## NOT FOR PUBLICATION WITHOUT THE APPROVAL
## OF THE TAX COURT COMMITTEE ON OPINIONS

June 28, 2023

Robert D. Blau, Esq.
Blau & Blau
223 Mountain Avenue
Springfield, New Jersey 07081

David B. Wolfe, Esq.
Skoloff & Wolfe, P.C.
293 Eisenhower Parkway, Suite 390
Livingston, New Jersey 07039

   Re: <u>West Orange Township v. Crest Ridge Realty, LLC</u>
      Docket Nos. 004373-2018, 000949-2019, 000648-2020,
      002579-2021, and 001394-2022

Dear Mr. Blau and Mr. Wolfe:

This letter shall constitute the court's opinion on Crest Ridge Realty, LLC's motions for summary judgment, and on West Orange Township's motion seeking to strike Crest Ridge Realty, LLC's 2020 tax year affirmative defenses.

Crest Ridge Realty, LLC ("Crest Ridge") is the owner of a 178-unit garden apartment complex, located at 200 Mt. Pleasant Avenue, in West Orange Township, Essex County, New Jersey (the "subject property"). The subject property is identified as block 80.03, lot 36 on West Orange Township's municipal tax map.[1]

For the 2018, 2019, 2020, 2021, and 2022 tax years, West Orange Township ("West Orange") instituted local property tax appeals against the subject property seeking to increase its

---

[1] Crest Ridge purchased the subject property in or about August 2017 for $40,500,000. For each of the 2018, 2019, 2020, and 2021 tax years, the subject property bore a local property tax assessment of $15,953,500 and equalized value ranging from $17,763,612 to $19,060,335.


Interpreter


ADA
Americans with
Disabilities Act

ENSURING
AN OPEN DOOR TO
JUSTICE



tax assessments ("reverse tax appeals"), arguing that the subject property's true or market value exceeds its equalized tax assessment.[2]

For the 2020 tax year, Crest Ridge filed a Second Amended Answer and Second Amended Counterclaim seeking a reduction in the subject property's local property tax assessment ("Second Amended Answer"). The Second Amended Answer raises ten affirmative defenses including that West Orange's complaint: (i) fails to state a claim on which relief may be granted; (ii) is barred in whole or in part by the statute of limitations; (iii) is barred in whole or in part by the doctrine of laches, waiver, or estoppel; (iv) is barred because it was required to be filed in the Superior Court as an action in lieu of prerogative writs; (v) should be dismissed due to an insufficient service of process; (vi) violates the Uniformity Clause of the New Jersey Constitution; (vii) violates the Fourteenth Amendment of the United States Constitution; (viii) is arbitrary, unreasonable, and capricious as there is no common level of assessment in West Orange; (ix) is based on an ulterior motive and is lacking in neutrality that all New Jersey municipalities must abide by in governing its taxpayers; and (x) violates the square corners doctrine.

Crest Ridge motions for summary judgment, seek dismissal of West Orange's complaints, alleging that the reverse tax appeals instituted by West Orange violate the Uniformity Clause of the New Jersey Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. In addition, Crest Ridge charges that West Orange's treatment of Crest Ridge and other similarly situated Class 4 commercial property owners in West Orange violates

---

[2]  West Orange filed reverse tax appeals against the subject property: (i) on March 22, 2018, for the 2018 tax year; (ii) on February 19, 2019, for the 2019 tax year; (iii) on February 12, 2020, for the 2020 tax year; (iv) on March 1, 2021, for the 2021 tax year; and (v) on February 28, 2022, for the 2022 tax year. West Orange's complaints each allege that the assessed value of the subject property is "less than the true assessable value" and that West Orange is discriminated against for the purposes of N.J.S.A. 54:3-21a.(1). As such, each reverse tax appeal complaint seeks to raise the subject property's local property tax assessment.






New Jersey's square corners doctrine.

In response, West Orange maintains that Crest Ridge "does not have a constitutional right to be under-assessed." Moreover, West Orange contends that its reverse tax appeals result in a more uniform tax burden, are not discriminatory, and do not violate the square corners doctrine.

As a precursor to Crest Ridge's summary judgment motions, West Orange filed motions seeking to strike Crest Ridge's 2020 tax year affirmative defenses, primarily targeting the same arguments raised by Crest Ridge under its summary judgment motions.

For the reasons expressed herein, the court finds that insufficient detailed information has been presented to enable the court to conclude that West Orange's reverse tax appeals, and the selection or identification of properties by West Orange's special counsel, violates the New Jersey Constitution's Uniformity Clause, the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution, or New Jersey's square corners doctrine. As such, the court denies Crest Ridge's motions for summary judgment.

Moreover, for the reasons expressed herein, the court finds that West Orange's motion seeking to strike Crest Ridge's 2020 tax year affirmative defenses asserting that, West Orange's complaint: (i) fails to state a claim upon which relief may be granted; (ii) is barred by the applicable limitations period; and (iii) is barred in whole or in part by the doctrine of laches, waiver, or estoppel, should be granted. However, the court finds that material questions of fact exist with respect to the balance of Crest Ridge's 2020 tax year affirmative defenses.

Accordingly, West Orange's motion seeking to strike Crest Ridge's 2020 tax years first, second, and third affirmative defenses are granted; and West Orange's motion seeking to strike Crest Ridge's 2020 tax year fourth, fifth, sixth, seventh, eighth, ninth, and tenth affirmative defenses are denied.


Interpreter


ADA
Americans with Disabilities Act


ENSURING
AN OPEN DOOR TO
JUSTICE



I.      **Procedural History and Factual Findings**

In accordance with R. 1:7-4(a), the court makes the following factual findings based on the submissions of the parties.

In or about 2012, West Orange advertised a Request for Qualifications ("RFQ") seeking to retain special counsel to defend it against local property tax appeals initiated by commercial property owners in the taxing district. In response to the RFQ, the Blau and Blau law firm submitted a proposal to represent West Orange not only in connection with the defense of its commercial local property tax appeals, but to prosecute reverse tax appeals against certain commercial properties in West Orange.

Beginning in 2012, and in each subsequent year thereafter, Blau and Blau (the "Blau firm") entered into an Agreement for Commercial Real Estate Tax Appeals (the "Retainer Agreements") with West Orange.[3] The Retainer Agreements provide that West Orange retains the Blau firm, as special counsel, to defend West Orange in connection with "all commercial real estate tax appeals pending or commenced in the Tax Court of New Jersey," for a fixed monthly rate.[4]

Notably, the Retainer Agreements further authorize the Blau firm, as special counsel, to "file [reverse] tax appeals for the Township [of West Orange] on a contingent fee basis of one-third of the money obtained for the Township from cases filed during the term of the contract."[5]

---

[3] N.J.S.A. 40A:11-3(b) provides that all municipal "contracts for professional services . . . may be awarded for a period not exceeding 12 consecutive months."

[4] The parties supplied the court with a copy of West Orange's January 23, 2018 Resolution and represented to the court that similar resolutions were adopted by West Orange for each of the 2012 through 2022 years. The Resolution authorizes West Orange's mayor to execute an agreement with the Blau firm "in the form annexed hereto, . . . for the provision of commercial real estate tax appeal services on a flat fee basis of $6,000 per month." However, the Resolution does not recite that West Orange has approved or authorized the engagement of the Blau firm, on a contingent fee basis, to prosecute reverse tax appeals.

[5] "Attorneys and clients can agree to fee arrangements of their choice, provided they do not violate the Rules of Professional Conduct." Balducci v. Cige, 240 N.J. 574, 597 (2020). However, "'an






Under the terms of the Retainer Agreements, the Blau firm must submit a "list of recommended appeals to the Township attorney for review and the Township attorney shall have the opportunity to 'veto' any recommended appeals at his discretion." The parties stipulated that the Township attorney has never exercised this "veto" power.

Importantly, the Retainer Agreements further state that "[i]t is contemplated that [special] [c]ounsel <u>will only recommend appeals on commercial properties</u> and will not be obligated to file an appeal unless [special counsel] believes the property is substantially under-assessed" (emphasis added). Thus, the criteria for identification of commercial properties and the selection of commercial properties against which reverse tax appeals will be recommended for prosecution is exclusively vested with the Blau firm, in its sole and absolute discretion. West Orange's municipal tax assessor is not consulted and offered no input regarding the identification or selection of properties for prosecution of reverse tax appeals.

Moreover, the Retainer Agreements provide that should West Orange "refuse[] to accept [special] [c]ounsel's recommendation to settle a matter, the Township shall be responsible for payment of the contingent fee based upon the recommendation and reimbursement of [special] Counsel's actual out of pocket expenses related to that Affirmative Appeal."[6]

---

attorney's freedom to contract' is subject to [the Supreme] Court's exercise of its constitutional authority to regulate the practice of law." <u>Delaney v. Dickey</u>, 244 N.J. 466, 484 (2020) (quoting <u>Cohen v. Radio-Elecs. Officers Union</u>, 146 N.J. 140, 155 (1996)). Accordingly, our Supreme Court has adopted court rules, "promulgated Rules of Professional Conduct and issued decisions setting forth the 'ethical duties that attorneys owe their clients and potential clients.'" <u>Ibid.</u> (quoting <u>Balducci</u>, 240 N.J. at 591-92). Our court rules mandate that attorneys "<u>shall not</u> enter into a contingent fee arrangement without first having advised the client of the right and afforded the client an opportunity to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services." <u>R.</u> 1:21-7(b) (emphasis added). During oral argument, West Orange's counsel acknowledged that the Blau firm did not afford West Orange the opportunity to retain the Blau firm to prosecute the reverse tax appeals on an hourly basis.

[6] Under the Local Public Contracts Law, N.J.S.A. 40A:11-4.5, "all [local public] contract awards shall be subject to rules concerning certification of availability of funds adopted pursuant to section

   

Between 2018 and 2021, the Blau firm, on behalf of West Orange, instituted approximately seventy-eight reverse tax appeals against Class 4, commercial properties in the taxing district.[7] During the same period, West Orange did not institute reverse tax appeals against any other class of property in the taxing district.

Between 2012 and 2022, West Orange received $3,251,683.30 in revenue resulting from the reverse tax appeals and paid the Blau firm $1,083,683.10 in contingent fees resulting from the prosecution of reverse tax appeals.

In or about March 2022, Crest Ridge moved before the court seeking to bifurcate the constitutional issues from the valuation issues in these matters. On March 18, 2022, the court granted Crest Ridge's motions bifurcating trial of these issues. The court further assigned the parties dates for the submission of motions for summary judgment on the constitutional issues.

On November 8, 2022, West Orange filed the instant motions seeking to strike Crest Ridge's 2020 tax year affirmative defenses.

On November 18, 2022, Crest Ridge filed the instant motions for summary judgment.

In support of its motions to strike Crest Ridge's 2020 tax year affirmative defenses, West Orange argues that the affirmative defenses "are merely legal conclusions unsupported by alleged facts. Defendant has had ample time for discovery and investigation. If defendant cannot establish

---

3 of P.L. 1971, c. 198 (C. 40A:11-3) and section 15 of P.L. 1971, c. 198 (C. 40A:11-15)." During oral argument, the court questioned how a certification of availability of funds was made by West Orange with respect to the Retainer Agreements when its municipal budget must be adopted annually and the Retainer Agreements, which could expose West Orange to liability for undetermined legal fees without a concomitant payment of tax revenue, runs for several years. However, West Orange's counsel advised that he was not prepared to address that issue during oral argument.

[7] According to the Blau firm, for the 2018 tax year, it recommended twenty (20) properties to West Orange for prosecution of reverse local property tax appeals. Thirteen (13) of the properties were Class 4A and seven (7) properties were Class 4C.






facts to support the [affirmative] defenses they should be withdrawn or dismissed." In sum, West Orange asserts that Crest Ridge has not and cannot offer any factual evidence demonstrating that West Orange's reverse tax appeals amount to a violation of: (i) New Jersey's Uniformity Clause; (ii) the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution; and (iii) the square corners doctrine set forth under F.M.C. Stores v. Morris Plains, 100 N.J. 418 (1985). West Orange further maintains that the balance of Crest Ridge's affirmative defenses must also be stricken, as Crest Ridge has not presented any facts in support of any of the affirmative defenses raised.

In support of its motions for summary judgment, Crest Ridge argues that West Orange's reverse tax appeal scheme violates the Uniformity Clause under New Jersey's Constitution, the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution, and New Jersey's square corners doctrine. Specifically, Crest Ridge alleges that the authority conferred on the Blau firm to identify only those "commercial properties [that] should be targeted for a reverse [tax] appeal," while excluding consideration of all other classes of property in the taxing district, is "at odds with" West Orange's duty as a governmental institution to deal with all taxpayers equally, and in a fair and impartial manner.

Crest Ridge underscores that New Jersey's Uniformity Clause mandates that all real property in a taxing district be assessed under a uniform set of rules and according to the same standard of value. Thus, the Uniformity Clause's purpose is to "distribute the burden of government upon taxable real property equally, without discrimination against one particular class of property." See N.J. Const. art. VIII, § 1, ¶ 1(a). Accordingly, Crest Ridge maintains that West Orange's scheme of identifying and pursuing reverse tax appeals against only Class 4, commercial properties, and not against any other class of real property in West Orange, constitutes a violation






of the Uniformity Clause.

Moreover, Crest Ridge maintains that West Orange's pattern of prosecuting reverse tax appeals solely Class 4, commercial properties, without pursuing reverse tax appeals against any other class of property in the taxing district, is discriminatory, fundamentally unfair, and constitutes a violation of the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution and New Jersey square corners doctrine.

Finally, Crest Ridge asserts that a "general lack of uniformity" of assessments exists in West Orange, because the last municipal-wide revaluation was conducted in 2011. Despite West Orange's Chapter 123 average ratio ranging from 83.70% to 89.81% during the tax years at issue, Crest Ridge asserts that said figures do not accurately reflect the "lack of uniformity" in the taxing district. According to Crest Ridge, "all Class 4C sales in excess of $10 million from 2017 to 2020 . . . were marked non-usable." Crest Ridge contends that West Orange's former municipal tax assessor's categorization of "significant sales [in the taxing district] with non-usable codes, . . . had the effect of minimizing the appearance of the lack of Uniformity in West Orange by maintaining an artificially high [Chapter 123] average ratio."[8]

In response, West Orange contends that the Uniformity Clause applies "only to [tax] assessments," and that its reverse tax appeals do not involve the municipal tax assessor or the unilateral determination of any local property tax assessments. West Orange maintains that its tax assessor continues to independently determine, on an annual basis, all local property tax

---

[8] From 2019 to 2022, West Orange's general coefficient of deviation ranged from 11.49% to 14.18%. The "coefficient of deviation is a statistical computation of the degree of uniformity of assessments within a taxing district." Essex County Bd. of Taxation v. Twp. of Caldwell, 21 N.J. Tax 188, 190 (App. Div. 2003). A lower coefficient of deviation reflects a higher degree of uniformity among assessments in a taxing district. "A coefficient of deviation greater than 15 percent generally indicates a need for revaluation." N.J.A.C. 18:12A-1.14(b)(1).






assessments in the taxing district, as mandated by N.J.S.A. 54:4-23. Thus, West Orange's reverse tax appeals do not violate the Uniformity Clause.

Moreover, West Orange further argues that one of the primary objectives of the Uniformity Clause is to ensure "equality in the distribution of the tax burden on taxable real property." West Orange asserts that its reverse tax appeal program does not disturb that goal by rendering the taxing district's local property tax assessments any less uniform. Rather, the reverse tax appeals are aimed at correcting perceived discriminatory assessments in the taxing district. West Orange asserts that the principles of fairness and equity "extend[] not merely to the individual taxpayer, but to all taxpayers in the taxing district." Accordingly, because West Orange is exercising its statutory right, under N.J.S.A. 54:3-21a.(1), to correct perceived discriminatory assessments in the taxing district and "protect the tax base," its actions do not amount to a violation of the Uniformity Clause.

West Orange further insists that it possessed a rational basis for filing the seventy-eight reverse tax appeals, and therefore, did not violate the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution. West Orange asserts that no fundamental right is at issue and Crest Ridge "does not belong to a suspect class," as such, the Blau firm's identification and selection of commercial properties to be subject to reverse tax appeals "need only be made in good faith and have a rational basis." West Orange charges that prosecuting the reverse tax appeals against Class 4, commercial properties that are "substantially under-assessed" is rational and does not amount to a violation of the Equal Protection Clause.

Finally, West Orange maintains that it possessed an "independent good faith reason" for selecting the seventy-eight Class 4, commercial properties that have been subject to reverse tax appeals. Moreover, it asserts that the reverse tax appeals were not undertaken to achieve a tactical






or litigation advantage over any taxpayers, or in response to a taxpayer's institution of a local property tax appeal. Thus, West Orange contends that it has not violated New Jersey's square corners doctrine.

## II. Conclusions of Law

### A. Summary judgment

Summary judgment "'serve[s] two competing jurisprudential philosophies': first, 'the desire to afford every litigant who has a *bona fide* cause of action or defense the opportunity to fully expose his case,' and second, to guard 'against groundless claims and frivolous defenses,' thus saving the resources of the parties and the court." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995) (emphasis in original)).

R. 4:46-2 outlines the circumstances under which summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2.]

In Brill, our Supreme Court adopted the federal approach to resolving motions for summary judgment, in which the "essence of the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In conducting this inquiry, the trial court must engage in a "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials." Ibid. The standard established by our Supreme Court in Brill is as follows:






> [W]hen deciding a motion for summary judgment under R. 4:46-2,
> the determination of whether there exists a genuine issue with
> respect to a material fact challenged requires the motion judge to
> consider whether the competent evidential material presented, when
> viewed in the light most favorable to the non-moving party in
> consideration of the most applicable evidentiary standard, are
> sufficient to permit a rational fact finder to resolve the alleged
> disputed issue in favor of the non-moving party.
>
> [Id. at 536.]

In considering all the material evidence before it with which to determine if there is a genuine issue of material fact, the court must view most favorably those items presented to it by the party opposing the motion and all doubts are to be resolved against the movant. Ruvolo v. American Casualty Co., 39 N.J. 490, 491 (1963). A court charged with "deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, . . . [i]nstead, the motion court draws all legitimate inferences from the facts in favor of the non-moving party." Globe Motor Co., 225 N.J. at 480 (internal citations omitted). Thus, the moving party bears the burden "to exclude any reasonable doubt as to the existence of any genuine issue of material fact" with respect to the claims being asserted. United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193, 196 (1961).

"By its plain language, R. 4:46-2 dictates that a court should deny a summary judgment motion only where a party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at 529. However, when the party opposing the motion merely presents "facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," then an otherwise meritorious application for summary judgment should not be defeated. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75 (1954). Hence, "when the evidence is so one-sided that one party must prevail as a matter of law . . . the trial court should not hesitate to grant summary judgment."






Brill, 142 N.J. at 540 (quoting Liberty Lobby, Inc., 477 U.S. at 252).

In applying the foregoing standards to the instant motions for summary judgment, and having reviewed the pleadings, certifications, and exhibits submitted in support of, and in opposition thereto, the court concludes that resolution of these matters by summary judgment is not ripe. The court finds that an insufficient motion record exists demonstrating that the actions of West Orange were intentionally and discriminatorily designed to target only one class of property in the taxing district. No evidence has been presented detailing the criteria, standards, or parameters that were evaluated and applied by West Orange in reviewing its tax roll to identify and select those properties that should face a reverse tax appeal, and whether those criteria were uniformly applied to all classes of real property in the taxing district or only a select few.

B. N.J.S.A. 54:3-21a.(1)

When taxpayers or taxing districts believe that a local property tax assessment is unreasonably high, low, discriminatory, or that a tax exemption was wrongly afforded or denied, a judicial or quasi-judicial remedy is available. See Tri-Terminal Corp. v. Edgewater, 68 N.J. 405, 409 (1975); In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 25 (1961). As expressed by our Appellate Division,

> [b]oth taxpayers and the taxing district have a right to challenge property assessments. Since 1950 New Jersey courts have consistently held that an assessment can be challenged on one or both of two separate grounds. The first ground seeks to fix the assessment at 'full and fair' value as required by statute. N.J.S.A. 54:4-23 . . . , the second cause of action seeks to fix an assessment at substantially the same proportion to true, or full and fair, value as the assessments of the 'common level' of properties in the taxing district. The second cause of action effectuates the constitutional requirement that there should be no discrimination among the levels of assessment of similarly-situated properties in a taxing district.
>
> [Weyerhaeuser Co. v. Closter, 190 N.J. Super. 528, 532 (App. Div.






1983) (internal citations omitted).]

The statutory scheme that affords taxpayers and taxing districts the right to pursue a judicial or quasi-judicial remedy is memorialized under N.J.S.A. 54:3-21. N.J.S.A. 54:3-21a.(1), provides, in part, that:

> a taxpayer feeling aggrieved by the assessed valuation or exempt status of the taxpayer's property or <u>a taxing district which may feel discriminated against by the assessed valuation or exempt status of property in the taxing district, or by the assessed valuation or exempt status of property in another taxing district in the county</u>, may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer or taxing district may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000.
>
> [N.J.S.A. 54:3-21a.(1) (emphasis added).][9]

Thus, our Legislature has specifically authorized taxing districts the ability to pursue local property tax appeals or reverse tax appeals when: (i) there is an alleged discriminatory assessment in the taxing district; (ii) it seeks to challenge to the exempt status property in the taxing district; and (iii) it seeks to challenge the assessed value or exempt status of property in other taxing districts in the county. <u>See</u> N.J.S.A. 54:3-21a.(1); <u>F.M.C. Stores Co.</u>, 100 N.J. 418; <u>Curtis-Wright Corp. v. Wood Ridge (Wood-Ridge)</u>, 2 N.J. Tax 143 (Tax 1981); <u>Fair Lawn Borough v. Blue Hill Assocs.</u>, 3 N.J. Tax 55 (Tax 1981); <u>Short Hills Associates/Taubman Co. v. Millburn Twp.</u>, 20 N.J. Tax 352, 354-56 (Tax 2002).

---

[9] N.J.S.A. 54:3-21a.(1) was amended by <u>L.</u> 2021, <u>c.</u> 17, §6, effective February 22, 2021, inserting the language "or exempt status" following each of the three "by the assessed valuation" phrases and deleting the phrase "feeling discriminated against by the assessed valuation of other property in the county" following "taxpayer's property" in the first sentence.






Accordingly, because our Legislature has conferred on taxing districts, like West Orange, the statutory right to pursue reverse tax appeals, the focus of the court's inquiry shifts to the conduct, selection process, and procedures adopted or employed by West Orange to gauge whether such actions withstand constitutional scrutiny.

### C. Uniformity Clause

The authority to levy a tax on real property is set forth under Article VIII, Section 1, Paragraph 1(a) of the New Jersey Constitution of 1947, commonly referred to as the Uniformity Clause (the "Uniformity Clause"). The Uniformity Clause expresses that:

> Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.

> [N.J. Const. art. VIII, § 1, ¶ 1(a).]

Thus, a "dominant principle" of the Uniformity Clause was to ensure an "equality of treatment and burden; . . . The standard of true value is but a means of realizing uniformity and equality, the preeminent consideration [is] in the apportionment of the tax burden in virtue of the constitutional guaranties of due process and the equal protection of the laws." Switz v. Middletown, 23 N.J. 580, 593 (1957).

As Justice O'Hern keenly discerned, the Uniformity Clause contains "two distinct components – that *all* property be taxed by general laws and uniform rules[,] and that defined *real* property be assessed at the same standard of value and at the general rate of the taxing district for its use." New Jersey State League of Municipalities v. Kimmelman, 105 N.J. 422, 427-28 (1987) (emphasis in original). The dual requirements of the Uniformity Clause under the New Jersey






Constitution of 1947 represented a departure from the former tax clause of the 1844 New Jersey Constitution, article IV, § VII, ¶ 12, as amended in 1875, which required only that, "[p]roperty shall be assessed for taxes under general laws, and by uniform rules, according to its true value." Id. at 428. The Uniformity Clause sought to eliminate preferential tax treatment and ensure that all property is equally taxed and taxpayers are "treated in a manner comparable to other similarly situated taxpayers." Regent Care Center, Inc. v. Hackensack City, 362 N.J. Super. 403, 412 (App. Div. 2003).

Importantly however, that is not to say that the Uniformity Clause requires all real property in New Jersey to be uniformly classified and valued for taxation purposes. Rather, as articulately stated by Justice O'Hern, the Uniformity Clause is intended to impose "limits on the Legislature's ability to [separately] classify real property for purposes of taxation." GMC v. City of Linden, 150 N.J. 522, 526 (1997). Careful examination of the Uniformity Clause discloses that the framers of our constitution intended all real property "shall be assessed according to the same standard of value, except as otherwise permitted herein, . . ." N.J. Const. art. VIII, § 1, ¶ 1(a) (emphasis added).[10] Thus, the state's Constitution expressly provides that certain narrowly tailored classifications and exceptions to the principles of uniformity may exist. However, our Legislature's ability to cast those separate classifications or exceptions must be adopted only under general laws or for specified purposes.

---

[10] In response to the Supreme Court's decision in Switz v. Kingsley, 37 N.J. 566 (1962), New Jersey voters overwhelmingly approved an amendment to N.J. Const. art. VIII, § 1 in the 1963 general election. "The new paragraph 1(b) mandated that the State accord farmland special property tax treatment, thereby rendering Switz moot." N.J. State League of Municipalities, 105 N.J. at 437. Thus, as amended, the Uniformity Clause recognizes that in New Jersey, separate classes of property exist, authorizing the Legislature to enact laws "to provide that the value of land, not less than 5 acres in area, which is . . . actively devoted to agricultural or horticultural use . . . , shall, for local tax purposes, . . . , be that value which such land has for agricultural or horticultural use." N.J. Const. art. VIII, § 1, ¶ 1(b).






Thus, our Supreme Court has specifically observed that "[e]xceptions to the provisions of the [U]niformity [C]lause are delineated in the exemption clause" of the New Jersey Constitution. Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 503 (1993); see also 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 590 (1999) (concluding that the "Legislature may exempt certain property from the Uniformity Clause either by general laws or for the specified purposes enumerated in the exemption clause."). The exemption clause, N.J. Const. art. VIII, § 1, ¶ 2, expressly authorizes our Legislature to afford property exemptions from taxation "only by general laws . . . Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit." N.J. Const. art. VIII, § 1, ¶ 2.

To constitute a "general law, the tax exemption must be based on classifications which rest upon 'substantial distinctions' that have a 'logical and reasonable basis' and include all property 'falling within the named classification.'" Town of Morristown v. Woman's Club of Morristown, 242 N.J. Super. 654, 662 (App. Div. 1990), aff'd, 124 N.J. 605 (1991) (internal citations omitted). "So long as they [the exemptions] are based on 'distinctions of degree having a rational basis,' tax exemptions created by the Legislature 'must be presumed to rest on [a rational] basis if there is any conceivable state of facts which would support [them].'" Woman's Club of Morristown, 124 N.J. at 618-19.

Thus, although the Uniformity Clause mandates that all real property: (i) be assessed at the same standard of value and tax rate in the taxing district; and (ii) be taxed under general laws and uniform rules, all property in New Jersey need not be uniformly classified for taxation purposes.






See GMC v. City of Linden, 150 N.J. at 526. Our state's constitution affords the Legislature limited authority to create separate classifications or exceptions provided that, they are adopted by general laws or for specified purposes. N.J. Const. art. VIII, § 1, ¶ 1(a).

> D. Equal Protection Clause

Although frequently raised collectively with alleged violations of the Uniformity Clause, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution does not expressly address issues involving the uniformity of taxation. Rather, the Equal Protection Clause provides in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> [U.S. Const. amend. XIV.]

However, the United States Supreme Court has expressed that classification of property for local taxation purposes "involves neither 'a fundamental right' nor a 'suspect' classification." Armour v. City of Indianapolis, 566 U.S. 673, 681 (2012). Rather, the Equal Protection Clause is applicable "'only to taxation which in fact bears unequally on persons or property of the same class.'" Allegheny Pittsburgh Coal Co. v. Cty. Com., 488 U.S. 336, 343 (1989) (quoting Charleston Fed. Savings & Loan Assn. v. Alderson, 324 U.S. 182, 190 (1945)). Thus, the "Equal Protection Clause . . . 'protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." Regent Care Center, Inc., 362 N.J. Super. at 412-13 (quoting West Milford Twp. v. Van Decker, 120 N.J. 354, 362-63 (1990)); see also Hillsborough Township v. Cromwell, 326 U.S. 620, 623 (1946); Baldwin Constr. Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 340 (1954).






Notably, like the Uniformity Clause, the "Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). As expressed by our state's Supreme Court, the "Equal Protection Clause does not bar classification of real property for local taxation . . . Rather the Equal Protection Clause condemns intentional, invidious treatment within a class the state law has created." In re Appeal of Kents 2124 Atl. Ave., Inc., 34 N.J. at 28 (citing Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522 (1959)) (internal citations omitted).

Provided that the criteria employed for the "selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy there is no denial of the equal protection of the law." Brown-Forman Co. v. Kentucky, 217 U.S. 563, 571 (1910). Thus, a classification that does not involve "fundamental rights nor proceed[s] along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319-320 (1993). In the local property tax context, "[d]iscrimination under the Equal Protection Clause occurs when a property is intentionally assessed at a higher percentage of true value than similarly-situated properties, and this 'in fact bears unequally on persons or property of the same class.'" Id. at 363 (citing Allegheny Pittsburgh Coal Co., 488 U.S. at 338).

Accordingly, when a "fundamental right" or "suspect" class is not implicated, New Jersey courts typically apply the rational basis test to discern if a law or government action has violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[11]

---

[11] Conversely, when a law or governmental action differentiates between a "suspect" or "semi-suspect" class or involves a "fundamental right," New Jersey courts have adopted a balancing test.






E.    Square Corners Doctrine

One of the core principles underlying the policy that government action is presumed valid is the expectation that government officials will act scrupulously, correctly, efficiently, and honestly in dealing with the public. Lowe's Home Ctr., Inc. v. City of Millville, 25 N.J. Tax 591, 604 (Tax 2010). Our Supreme Court has demanded that "government officials act solely in the public interest. In dealing with the public, government must 'turn square corners'…[i]t may not conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity. . . ." F.M.C. Stores Co., 100 N.J. at 426-427. However, it is not a prerequisite to the application of the square corners doctrine that the municipality engage in bad faith, innocent misrepresentations or inadvertent errors "do not relieve the government of its obligation to deal fairly, forthrightly, and scrupulous with the public." CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd., 414 N.J. Super. 563, 586 (App. Div. 2010); Gastime, Inc. v. Dir., Div. of Taxation, 20 N.J. Tax 158, 163 (Tax 2002); Lowe's Home Ctr., Inc., 25 N.J. Tax at 591.

Moreover, the "[p]roper administration of our tax laws and the successful implementation of statutes [are] designed to . . . demand consistency and fairness from municipal officers in their dealings with property owners." Lowe's Home Ctr., Inc., 25 N.J. Tax at 606. Legislative goals could be undermined if a municipality was permitted to exercise its duties inconsistent with the concepts of fundamental fairness. Ibid. A taxing district "does not stand in the same shoes as an ordinary citizen [and] the municipality and the aggrieved taxpayer are not to be analogized to private litigants competing through the judicial machinery for a tactical advantage." F.M.C. Stores

---

Caviglia v. Royal Tours of America, 178 N.J. 460, 472 (2004) (quoting Greenberg v. Kimmelman, 99 N.J. 552, 563 (1985)).






Co., 100 N.J. at 426.

The court may exercise equitable relief under the square corners doctrine when the municipality falls short of the standards of fairness and fair dealings that citizens have the right to expect from public officials. Lowe's Home Ctr., Inc., 25 N.J. Tax at 602-603. Importantly, the square corners doctrine is not to be applied with "rigidity or [with] undue technicality." Principles of equity are "always subject to the guiding principles of fundamental fairness." New Concepts for Living, Inc. v. City of Hackensack, 376 N.J. Super. 394, 404 (App. Div. 2005). Fundamental fairness requires a careful analysis of statutory language to unfold legislative intent and a balancing of the interests involved. In general, fundamental fairness in tax matters extends not merely to the individual taxpayer, but to all taxpayers in the taxing district.

  F. Reverse tax appeals

Here, as detailed in Crest Ridge's brief, New Jersey has experienced a notable increase in the quantity of reverse tax appeals filed since 2011. According to Crest Ridge, the statewide volume of reverse tax appeals has risen by approximately 681% between 2011 and 2022. Despite this marked increase, Crest Ridge maintains that reverse tax appeals presently account for only seven percent of the Tax Court's overall docket. Although there has been an intensification in reverse tax appeal prosecutions over the past decade, a bounty of reported decisions does not exist addressing this statutorily afforded taxing district action.

The court's analysis begins with a brief discussion of our Supreme Court's decision in West Milford Twp. v. Van Decker, 120 N.J. 354 (1990), as that case addresses the Uniformity Clause, Equal Protection Clause, and the intersection of municipal action and constitutionally afforded protections.

In Van Decker, following the taxpayer's purchase of a single-family home in the taxing






district, the municipal tax assessor increased the property's assessment to its equalized fair market value, "while leaving undisturbed the [assessed] valuations of properties in the same class that have not been sold." Id. at 357.[12] The taxpayer argued that such conduct constituted a spot assessment and violated the Uniformity Clause and the Equal Protection Clause. See ibid.

Articulating that "it is axiomatic that no statute can sanction an unconstitutional practice," Ibid., the Court found that the municipal tax assessor's "welcome stranger" pattern constituted an "intentional discriminatory practice[]," by shifting more of the municipal tax burden to new property owners. Id. at 361. The Court emphatically expressed that the Uniformity Clause "require[s] taxpayers be treated in a manner comparable to other similarly situated taxpayers." Id. at 361. The Court further emphasized that although a taxing district may revise property tax "assessments in years other than years of municipal-wide revaluation for legitimate reasons," the taxing district's practice of "arbitrary intentional discrimination . . . is unconstitutional." Id. at 362. Although it is not clear from the majority opinion whether it was the process, the resulting disparity in the tax burden, or both, that the court found so repugnant, the result of the practice was that new property owners incurred increased tax assessments and were paying proportionately higher property taxes than owners of similarly situated properties that had not recently sold. The Court found that the government engaged in a disparate and arbitrary action by treating similarly situated taxpayers differently, and correspondingly, unfairly shifted the tax burden to a segment of property owners, in violation of basic constitutional protections.

Importantly, the Court noted that it was of no consequence that the assessor's actions produced tax assessments on the sold properties falling within the Chapter 123 parameters. The

---

[12] The municipal tax assessor also increased the assessed value of three hundred forty-six other properties in the taxing district that sold during 1984.






Court stated that consideration of Chapter 123 in the face of "an egregious case of discrimination . . . is one of the narrow few that falls outside the scope of Chapter 123." Id. at 365. Thus, when the municipal action results in a disproportionate allocation of the tax burden among similarly situated taxpayers, the conduct violates both the federal and state constitutional protections and "Chapter 123 is not applicable." Ibid.

In Hudson & M.R. Co. v. Jersey City, Justice Jacobs (then Appellate Division Judge Jacobs), observed that the law surrounding reverse tax appeals is not well established and the statutory scheme "prescribes no formal requirements." 6 N.J. Super. 333, 342-43 (App. Div. 1950). There, the plaintiff argued that Jersey City's resolutions authorizing the further prosecution of 876 local property tax appeals out of 70,000 county board tax appeals "constituted the deliberate making of non-uniform assessments in violation of [the tax clause under] Article IV, Section VII, paragraph 12 of the 1844 [New Jersey] Constitution[13] and Equal Protection Clause under the Fourteenth Amendment of the United States Constitution." Id. at 339. In addressing a taxing district's ability to pursue reverse tax appeals under N.J.S.A. 54:3-21, Justice Jacobs observed that our Legislature has,

> afforded broad legislative authority to the City to appeal in any one or more instances where it considered that the assessment, . . . was below true value . . . When confronted with the practical problems incident to the maintenance of over 70,000 appeals it was not, as appellants suggest, left with the alternative of dropping all or prosecuting all. No sound reason has been advancd [sic] for prohibiting it from seeking, in the fair and honest exercise of its judgment, to protect its ratables and vindicate its position by prosecuting appeals in situations where it had most at stake while, at the same time, abandoning its appeals in the greater mass of cases where the inconvenience and expense might well far outweigh the possible gain.

---

[13] The tax clause under the 1844 New Jersey Constitution, article IV, § VII, ¶ 12, as amended in 1875, was the precursor to the Uniformity Clause stating that "[p]roperty shall be assessed for taxes under general laws, and by uniform rules, according to its true value."






[Id. at 341-342 (internal citations omitted).]

In upholding the validity of the city's resolutions authorizing the further prosecution of the 876 tax appeals, Justice Jacobs reasoned that if government is to properly function, "municipal officials, acting in good faith, must have the authority to fix general policies, delegate to subordinates the working out of details, and make their ultimate official determinations on the basis of the reliability of reports submitted by the subordinate." Id. at 342.[14]

A cornerstone of Justice Jacobs' ruling was founded on the core principle that our Legislature has afforded taxing districts a statutory remedy to pursue local property tax appeals against tax assessments that it perceives as discriminatory or incorrect, and a "presumption [exists] that [municipal] action was taken in good faith and in the public interest." Id. at 342. Thus, absent credible and cogent evidence to the contrary, municipal action authorizing the prosecution of reverse tax appeals should not be viewed as discriminatory and violative of the federal and New Jersey constitutions.

Similarly, in Freehold Borough v. WNY Properties, L.P., the taxpayer challenged the taxing district's reverse tax appeal, arguing that the appeal arose because of the property's recent sale at a value exceeding its equalized tax assessment. 20 N.J. Tax 588 (Tax 2003). The taxpayer argued that the reverse tax appeal amounted to "no more than an attempt by the municipality to

---

[14] In interpreting the New Jersey Constitution of 1844, article IV, § VII, ¶ 12, as amended in 1875, Justice Jacobs stated that, "[i]t seems clear that this clause was not in any sense violated by the City's action. The appellants do not dispute that the assessments throughout the City, as originally made by the assessor and revised by the county board, were presumptively uniform and according to true value in compliance with the constitutional mandate." Id. at 339. However, Justice Jacobs' analysis focused only on the tax clause under the New Jersey Constitution of 1844, as amended in 1875, as the city's resolution was adopted prior to the adoption of the New Jersey Constitution of 1947. Thus, he was not tasked with evaluating or considering the "two distinct components" of the Uniformity Clause. New Jersey State League of Municipalities, 105 N.J. at 427.






accomplish indirectly the unconstitutional spot assessment which its assessor is barred from making" directly. Id. at 592. In addressing the taxpayer's arguments, the court focused on the authority, function, and respective roles that the tax assessor and municipal governing body play in fixing local property tax assessments.

The court remarked that despite viewing tax assessors as "members of the municipal family and the municipal tax appeal litigation team," the "municipality and the assessor have distinct and separate roles in the assessment and taxation of property." Id. at 602. The court emphasized that "municipal governing bodies or officials may not interfere with the assessor in the performance of his or her duties," and thus, when a municipal governing body "disagrees with the assessments of its assessor, the appropriate recourse is by way of appeal of those assessments." Ibid. (citing Jeffers v. City of Jersey City, 8 N.J. Tax 313, 317 (Law Div. 1986); Arace v. Irvington, 75 N.J. Super. 258, 268-69 (Law Div. 1962)). Significantly, the court observed that "it is the municipality and not the assessor which controls the decision to appeal, as well as the conduct of the litigation, including any decision to settle." Ibid. (citing Clinton Township Citizen's Comm., Inc. v. Mayor & Council of Clinton Twp., 185 N.J. Super. 343, 352 (Law Div. 1982)).

Finding the municipality's prosecution of a reverse tax appeal distinguishable from the process of levying a tax assessment, and thus, that it did not amount to an unconstitutional spot assessment, the court stated that,

> [a]n assessment is the assessor's unilateral determination based on the price at which, in the assessor's judgment, a parcel of property would sell for at a fair and bona fide sale by private contract on October 1 preceding the tax year. N.J.S.A. 54:4-23. In making an assessment, the assessor acts as an agent of the Legislature in a quasi-judicial capacity similar to that of a magistrate, and must act in a fair and impartial manner.

> [Id. at 604-05.]

   

Consequently, the assessor's action in imposing a tax "assessment enjoys a presumption of correctness" and an aggrieved taxpayer feeling discriminated against by the assessed valuation of his or her property must not only timely pursue a judicial or quasi-judicial remedy, but also bears the burden of presenting cogent evidence to the tribunal sufficient to rebut that presumption. Id. at 605 (citing Pantasote Co., 100 N.J. at 413).

Conversely, a reverse tax appeal "is a claim [by the taxing district] that a property has been underassessed, and a request for relief from this court in the form of a determination as to the property's true value." Id. at 605. In a reverse tax appeal proceeding, the "court is required to 'apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment'" for the property. Ibid. Thus, because a tax assessment enjoys a presumption of validity in a reverse tax appeal, the burden shifts to the taxing district to not only timely institute litigation, but to prove by cogent evidence that the tax assessment imposed by the assessor is erroneous. Only after the taxing district has overcome that burden with cogent evidence will the court be tasked with weighing the evidence presented and arriving at a determination of the property's true value.

However, the court emphasized that reverse tax appeal programs are imperfect. Unlike a municipal-wide revaluation impacting the tax assessments of all property in a taxing district, a taxing district's filing of a reverse tax appeal:

> will not, . . . cure an assessment list that lacks uniformity. If assessment lists are not regularly revised to reflect current market values, and assessments are instead carried over from year to year, some properties will remain underassessed unless the municipality brings an appeal. Other properties will be over[-]assessed unless the taxpayer brings an appeal. Absent an appeal of every inaccurate assessment, there will be disparity in the tax treatment of property in a given taxing district.
>
> [Id. at 606 (emphasis added).]






Importantly, the court observed that the "only remedy provided directly to a municipality in cases of discriminatory assessment is appeal pursuant to N.J.S.A. 54:3-21." Id. at 609. Like the court in Hudson & M.R. Co. v. Jersey City, Judge Menyuk aptly emphasized that the court's role in examining the municipal action prompting judicial review was "whether the challenged action is reasonable and not arbitrary." Ibid. (citing Ebler v. City of Newark, 54 N.J. 487, 491 (1969); West Point Island Civic Ass'n v. Township Comm. of Dover, 54 N.J. 339, 347 (1969)).[15]

Interestingly, the court observed that "[t]here may be some circumstances under which selective [reverse tax] appeal[s] by a municipality may be arbitrary and unreasonable, such as, for example, when there is a general lack of uniformity within a taxing district and the municipality has resisted the efforts of its assessor or the county board of taxation to carry out a revaluation." Id. at 610. However, such analysis requires more than general allegations of a lack of uniformity in the taxing district. As expressed in Hudson & M.R. Co., absent credible and cogent evidence to the contrary, municipal action authorizing the prosecution of reverse tax appeals should not be viewed as discriminatory and violative of the federal and New Jersey constitutions. Therefore, specific details must be offered about the taxing district's selection process and the equality of treatment and tax burden among similarly situated properties in the taxing district.

Accordingly, employing the parameters expressed by the courts in Van Decker, Hudson & M.R. Co., and WNY Properties, L.P. to gauge whether West Orange's actions violate the Uniformity Clause, the court's focus must be whether they were performed under the proper scope of authority, undertaken in good faith, and produced a systematic and equitable result when measured against all similarly situated property in the taxing district. Although the Uniformity

---

[15] The court declines Crest Ridge's invitation to conclude that WNY Properties, L.P. "is not good law."






Clause does not require all property be uniformly classified for taxation purposes, it mandates that all real property be assessed at the same standard of value and taxed by general laws and under uniform rules. Therefore, if cogent evidence is presented demonstrating that West Orange's actions were arbitrary, intentional, amounted to errant disparate treatment of similarly situated property, and inappropriately shifted the tax burden, West Orange's actions will not withstand constitutional scrutiny under the Uniformity Clause.

Moreover, because the classification of real property for local property taxation purposes does not involve a "fundamental right" or a "suspect" class, the court, in evaluating the alleged violations under the Equal Protection Clause, must gauge whether West Orange's actions were capricious and discriminatory, bearing unequally on taxpayers within the same class, or whether the classification criteria were based on a reasonable and rational government policy.

In support of its argument that West Orange's reverse tax appeal program violates the Uniformity Clause and Equal Protection Clause, Crest Ridge relies on a Pennsylvania Supreme Court decision, Valley Forge Towers Apts. N, LP v. Upper Merion Area Sch. Dist. & Keystone Realty Advisors, LLC, 640 Pa. 489 (Pa. 2017).

In Valley Forge Towers Apts. N, L.P., the Pennsylvania Supreme Court examined whether a local school district's policy of prosecuting reverse tax appeals "solely on commercial properties, including apartment complexes," amounted to a violation of that state's uniformity clause. Id. at 495.[16] In that matter, the school district retained Keystone, a private firm, to advise "which properties should be targeted for [reverse] appeal." Ibid. Keystone recommended that the school district concentrate on commercial properties "because these properties' values were generally

---

[16] Pennsylvania's uniformity clause provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA Const. art. VIII, § 1.






higher than those of single-family homes, and hence raising their assessments would result in a greater tax-revenue increase than doing the same with under-assessed single-family homes, including those which were under-assessed by a greater percentage." Id. at 496. The motion record further disclosed that "[a]nother alleged factor motivating the decision [to concentrate on only commercial properties] was that most such homes are owned by school district residents who vote in local elections, and it would be politically unpopular to appeal their assessments." Ibid.

Valley Forge Towers Apts. N, LP ("Valley Forge"), the owner of commercial apartment complexes targeted by the school district's reverse tax appeal program, filed a complaint alleging that the school district's systematic targeting of commercial properties violated Pennsylvania's uniformity clause and the Equal Protection Clause. Ibid. Valley Forge maintained that the school district intentionally ignored prosecuting reverse tax appeals against single-family homes that had lower assessment to true value ratios than commercial properties. In response, the school district argued that its sub-classification of properties (commercial versus single-family residential) and treatment of the different property subclasses was "neither arbitrary or capricious" but instead based on "reasonable economic and financial objectives," and therefore, not violative of Pennsylvania's uniformity clause. Id. at 511-12.

In conducting its analysis, the court stated that "an established feature of Pennsylvania uniformity jurisprudence [is] that 'all real estate is a constitutionally designated class entitled to uniform treatment and the ratio of assessed value to market value adopted by the taxing district must be applied equally and uniformly to all real estate within the taxing authority's jurisdiction.'" Id. at 508. While acknowledging that Pennsylvania's treatment of all real property as a "single class entitled to uniform treatment" may be viewed as "incongruous," the court expressed the view that Pennsylvania's uniformity clause "incorporates federal Equal Protection guarantees as a






constitutional floor." Id. at 508. Thus, the "prevailing requirement" in Pennsylvania mandates that "similarly situated taxpayers should not be deliberately treated differently by taxing authorities." Id. at 509 (quoting Downingtown Area School District v. Chester County Board of Assessment Appeals, 590 Pa. 459, 470 (2006)). Yet, the court further explained that "the term 'deliberate' does not exclusively connote wrongful conduct, but also includes any intentional or systematic method of enforcement of tax laws." Id. at 510 (quoting Downington, 590 Pa. 470 n.10).

However, the court was "not persuaded that the conventional rational-basis standard . . . applies in a dispute such as this." Id. at 513. Rather, the court expressed that because under Pennsylvania law,

> all real estate in a taxing district forms a single collective class to be treated uniformly, and that systematic disparate enforcement of the tax laws based on property sub-classification, even absent wrongful conduct, is constitutionally precluded – it follows that a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that subclassification is drawn according to property type – that is, its use as commercial, apartment complex, single-family residential, industrial or the like.

> [Id. at 515.]

In sum, the Pennsylvania Supreme Court found that "all property in a taxing district is a single class, and as a consequence, the uniformity clause does not permit the government, including taxing authorities, to treat different property subclassifications in a disparate manner." Id. at 510. Accordingly, the Court ruled that the school district's reverse tax appeal program violated the state's uniformity clause, because it represented a "systematic disparate enforcement of the tax laws based on property sub-classification, even absent wrongful conduct, is






constitutionally precluded." Id. at 515.[17]

Although the court's decision in Valley Forge Towers Apts. N, L.P. is neither authoritative

nor binding on this court, the court observes that the Pennsylvania Supreme Court's consideration

of whether the taxing authorities are treating and taxing similarly situated taxpayers differently,

and consequently bearing a disproportionate share of the tax burden, is, generally, consistent with

New Jersey courts analyses for evaluating alleged violations of the Uniformity Clause.[18]

Here, the court's review of the motion record discloses that from 2018 to 2022, West

---

[17] Following the Valley Forge Towers Apts. N., L.P. decision, several Pennsylvania intermediate appellate courts analyzed and distinguished elements of school district reverse tax appeal programs. See Punxsutawney Area Sch. Dist. v. Broadwing Timber, LLC, 219 A.3d 729 (2019); Bethlehem Area Sch. Dist. V. Bd. of Revenue Appeals, 225 A.3d 212 (2020); GM Berkshire Hills LLC v. Berks County Board of Assessment, 257 A.3d 822 (2021). In Punxsutawney Area Sch. Dist. v. Broadwing Timber, LLC, the school district's business administrator reviewed monthly "atypically lucrative property sales,' without consideration of the type or ownership of property being sold, and presented those financial findings to the School District's superintendent and solicitor." Id. at 729. In upholding the constitutionality of the practice, the court found that although not based on a precise formula, it was "based on a financial analysis implemented without regard to a property type or ownership and is of the type approved by Valley Forge Towers." Ibid. In GM Berkshire Hills LLC v. Berks Cty. Bd. of Assessment, the school district adopted a resolution instructing the "business office to begin with recently sold properties within the District and their current assessments from the STEB [State Equalization Board] reports, apply the County's applicable common level ratio . . . to each recent sales price, compare the resulting figure to the property's current assessed value, and pursue an appeal if the difference between the two figures exceeded $150,000 for a given property. The $150,000 figure represent[ing] a cost-benefit threshold at which revenue from a successful appeal would justify the cost of the legal and appraisal fees necessary for the District to undertake the appeal." Ibid. The court found that the school district's formula did not violate Pennsylvania's uniformity clause, because the process was implemented without consideration of the property type. Id. at 834.

[18] However, this court does not find that the Pennsylvania Supreme Court's supplanting of the rational basis test comports with New Jersey jurisprudence. In New Jersey, when faced with a law or action that neither implicates a "fundamental right" nor a "suspect class," the court's consideration of whether the law or action violates the Equal Protection Clause turns on the rational basis test. See Greenberg v. Kimmelman, 99 N.J. 552, 565 (1985); Whitaker v. DeVilla, 147 N.J. 341, 353 (1997); Secure Heritage, Inc. v. City of Cape May, 361 N.J. Super. 281, 300 (App. Div. 2003); Bentz v. Twp. of Little Egg Harbor, 31 N.J. Tax 209, 226 (App. Div. 2019); Chester Borough v. World Challenge, Inc., 14 N.J. Tax 20, 29 (Tax 1994); Horizon Blue Cross Blue Shield v. State, 25 N.J. Tax 290, 303 (Tax 2009).






Orange instituted seventy-eight reverse tax appeals against Class 4C, commercial properties, at the recommendation of the Blau firm, and no reverse tax appeals were prosecuted against any other class of property. Admittedly, West Orange's former municipal tax assessor expressed that a lack of uniformity existed in the taxing district during the tax years at issue, due to West Orange's failure to conduct a municipal-wide revaluation.

However, no evidence has been presented in support of, or in opposition to the summary judgment motions, regarding the methodology or procedures employed by the Blau firm in identifying the commercial properties that it recommended for prosecution of reverse tax appeals. Mr. Blau's certification provides limited meaningful insight into the characteristics, criteria, or benchmarks that led the Blau firm to identify the properties recommended for prosecution of reverse tax appeals. Moreover, Crest Ridge has provided no evidence that the methodology and selection criteria employed by the Blau firm amounted to arbitrary intentional discrimination.

Further, since the Retainer Agreements with the Blau firm limited its representation of West Orange to only "commercial properties," no evidence was adduced in the motion record revealing whether West Orange directed or retained any other person or firm to gauge or evaluate the potential prosecution of reverse tax appeals against other classes of property in West Orange.[19] Thus, the court questions whether West Orange's reverse tax appeal strategy was intentionally designed to exclude consideration of some or all members of a class of real property in West

---

[19] The Joint Stipulation of Facts submitted by Crest Ridge and West Orange recites only that: (i) "West Orange has not engaged any law firm . . . to file reverse tax appeals against any non-commercial properties"; and (ii) West Orange "has not filed any reverse tax appeals against non-commercial properties." Thus, although West Orange may not have authorized a law firm "to file" reverse tax appeals against other classes of property in the taxing district, that does not necessarily mean that West Orange did not evaluate reverse tax appeals against other classes of property. For example, West Orange may have evaluated reverse tax appeals against other classes of property, however, none of those properties met the nondiscriminatory parameters required for prosecution of reverse tax appeals.






Orange.

Finally, our Legislature has afforded taxing districts the statutory right, under N.J.S.A. 54:3-21a.(1), to institute local property tax appeals when they "feel discriminated against by the assessed valuation or exempt status of property in the taxing district, or by the assessed valuation or exempt status of property in another taxing district in the county. . ."  N.J.S.A. 54:3-21a.(1). However, no evidence has been presented that West Orange or the Blau firm conducted themselves in a manner designed to achieve a bargaining or litigation advantage in the prosecution of the reverse tax appeals.  Absent evidence to the contrary, "[i]t is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives." F.M.C. Stores Co., 100 N.J. at 427.

Accordingly, for the above-stated reasons, the court finds that disposition of these local property tax appeals by summary judgment is not appropriate.

## G. Motion to strike affirmative defenses

Striking an affirmative defense is an appropriate remedy when it is "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." Semexant v. MIL Ltd.-Boston Mach. Div., 252 N.J. Super. 318, 322 (App. Div. 1991).  However, when no reasonable basis in law exists or factual issues remain outstanding, it is inappropriate for the court to strike an affirmative defense.

Here, for the 2020 tax year, Crest Ridge asserts the following affirmative defenses in response to West Orange's complaint: (i) it fails to state a claim on which relief may be granted; (ii) is barred in whole or in part by the statute of limitations; (iii) is barred in whole or in part by the doctrine of laches, waiver, or estoppel; (iv) is barred because it was required to be filed in the Superior Court as an action in lieu of prerogative writs; (v) should be dismissed due to an






insufficient service of process; (vi) violates the Uniformity Clause of the New Jersey Constitution; (vii) violates the Fourteenth Amendment of the United States Constitution; (viii) is arbitrary, unreasonable and capricious as there is no common level of assessment in West Orange; (ix) is based on an ulterior motive and is lacking in neutrality that all New Jersey municipalities must abide by in governing its taxpayers; and (x) violates the square corners doctrine.

1. Statute of limitations; insufficiency of service of process; and fails to state a claim on which relief may be granted

The court begins its analysis by addressing Crest Ridge's affirmative defenses that West Orange's 2020 complaint is time-barred under the applicable limitations period; that there was insufficient service of process on Crest Ridge; and that the complaint fails to state a claim on which relief may be granted.

The applicable limitations period for commencement of a local property tax appeal/reverse tax appeal is controlled by N.J.S.A. 54:3-21a.(1), which prescribes the procedure for a taxpayer or taxing district that it believes is "aggrieved by the assessed valuation of property, or discriminated against by the assessed valuation of other property." F.M.C. Stores Co., 100 N.J. at 423. As stated above, N.J.S.A. 54:3-21a.(1), provides, in relevant part, that:

> a taxing district which may feel discriminated against by the assessed valuation or exempt status of property in the taxing district . . . may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000.

[N.J.S.A. 54:3-21a.(1).]

Thus, a necessary predicate to a taxing district challenging the assessed value of a property based on a claim of discrimination requires the aggrieved party file a petition of appeal with the county board of taxation (or direct appeal with the Tax Court if the assessed value of the property






exceeds $1,000,000), the later of April 1 or 45 days from the mailing of the notice of assessment. Importantly, the "[f]ailure to file a timely appeal pursuant to N.J.S.A. 54:3-21[] . . . is a fatal jurisdictional defect requiring dismissal of the complaint." Regent Care Ctr. v. City of Hackensack, 18 N.J. Tax 320, 324 (Tax 1999). Accordingly, the "timeliness of a tax appeal is critical." Prime Accounting Dept. v. Twp. of Carney's Point, 212 N.J. 493, 507 (2013).

Although N.J.S.A. 54:3-21a.(1) delineates when a challenge to a local property tax assessment must be instituted, it does not set forth how service of the complaint must be effectuated. Therefore, the court must examine the court rules governing whom service must be effectuated on and the method and timing of such service.

R. 8:5-3(a)(8) requires that,

> A plaintiff who is not the record owner of a property who files a complaint to contest a local property tax assessment, whether such complaint is by direct review pursuant to N.J.S.A. 54:3-21 . . . , or to review the action of a County Board of Taxation pursuant to N.J.S.A. 54:51A-1, shall caption the complaint with the name of the record owner of the property, the name of the plaintiff . . . In such cases, the plaintiff <u>shall serve a copy of the complaint, as well as any counterclaim, on the record owner of the property</u>. . . .
>
> [R. 8:5-3(a)(8) (emphasis added).]

Moreover, R. 8:5-4 further requires that service of the complaint:

> shall be made personally or by certified or registered mail, return receipt requested, as provided in R. 4:4-4 with the following exceptions:
>
> . . .
>
> (3) Service upon a taxpayer in a local property tax matter shall be:
>
> . . .
>
> (ii) . . . if the complaint is a <u>direct appeal by a taxing district</u> pursuant to N.J.S.A. 54:3-21, service <u>shall be made upon the taxpayer by personal service or by certified or registered mail, return receipt</u>

   

<u>requested</u>, and if by mail, at the address listed on the County Board
of Taxation petition by the taxpayer, or if none, at the last known
address as it appears on the last taxing district tax duplicate.

[<u>R.</u> 8:5-4.]

Here, it is undisputed that West Orange's tax assessor issued Crest Ridge a Notice of Property Assessment for 2020, prior to February 1, 2020.[20] The court's review of the Notice of Property Assessment for 2020 discloses that it was mailed to: "Crest Ridge Realty, llc [sic], 2 Executive Drive #430, Fort Lee, NJ 07024."[21] Crest Ridge does not assert or claim that the Notice of Property Assessment for 2020 was improperly addressed or contained inaccurate information.

Moreover, it is further undisputed that on February 12, 2020, West Orange timely filed its complaint with the Tax Court challenging the subject property's 2020 tax year assessment. West Orange's 2020 complaint asserts that the subject property's "assessment is less than the true or assessable value of the property and that [West Orange] is discriminated against by the assessment which is less than the true or assessable value of the property." Accordingly, West Orange's complaint seeks entry of judgment "increasing the assessment to the current assessable value of the property."

Interestingly, the Proof of Service annexed to West Orange's 2020 complaint recites that it was served "by regular mail" upon the following:

Attorney:     Marc E. Leibman
              Kaufman Semeraro & Leibman
              Two Executive Drive, Suite 530
              Fort Lee, Nj [sic] 07204

---

[20] West Orange's Notice of Property Assessment for 2020 is annexed to its complaint. N.J.S.A. 54:4-38.1 requires that prior to February 1st each year, the municipal tax assessor must "notify by mail each taxpayer of the current assessment and preceding year's taxes . . . Any notice issued by the assessor or county board of taxation shall contain information instructing taxpayers on how to appeal their assessment along with the deadline to file an appeal." N.J.S.A. 54:4-38.1.

[21] The court's review of the 2019 complaint discloses that the Notice of Property Assessment for 2019 was mailed to: "Crest Ridge Realty, llc [sic], 1640 Anderson Ave, Fort Lee, NJ 07024."






However, nothing is contained in the motion record revealing why West Orange did not personally serve Crest Ridge with the 2020 complaint or mail the complaint to Crest Ridge by certified mail, return receipt requested, as required under R. 8:5-4.  Moreover, West Orange does not address why it was or should be relieved of its obligation, under R. 8:5-4, to properly effectuate service of the 2020 complaint upon Crest Ridge "by personal service or by certified or registered mail, return receipt requested . . . at the last known address as it appears on the last taxing district tax duplicate." R. 8:5-4(3)(ii).

Therefore, the court finds that Crest Ridge has failed to adequately demonstrate any factual or legal basis underpinning its affirmative defense charging that West Orange's 2020 complaint is barred in whole or in part by the statute of limitations.  In addition, Crest Ridge has failed to offer any factual or legal support for its affirmative defense that West Orange's 2020 complaint fails to state a claim for relief.  West Orange has timely asserted a claim of discrimination as permitted under N.J.S.A. 54:4-3-21a.(1).  Accordingly, the court grants West Orange's motion seeking to strike Crest Ridge's affirmative defense that: (i) West Orange's 2020 complaint is barred in whole or in part by the statute of limitations; and (ii) West Orange's 2020 complaint fails to state a claim for relief.

However, the court finds that West Orange has failed to demonstrate why it did not effectuate service of the 2020 complaint on Crest Ridge in accordance with R. 8:5-4(3)(ii).  Accordingly, West Orange's motion seeking to strike Crest Ridge's affirmative defense that West Orange's 2020 complaint should be dismissed due to an insufficient service of process is denied.

2.    Doctrines of laches, waiver, and estoppel

"Laches is an equitable doctrine, not governed by fixed time limits, that is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained






delay in exercising that right to the prejudice of the other party." Fox v. Millman, 210 N.J. 401, 405 (2012). The doctrine of laches can be "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." M.J. Ocean, Inc. v. Dir., Div. of Taxation, 23 N.J. Tax 646, 652 (Tax 2008) (quoting Knorr v. Smeal, 178 N.J. 169, 180-181 (2003)).

Moreover, waiver is frequently defined as "the voluntary and intentional relinquishment of a known right." Knorr, 178 N.J. at 177. "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Ibid. The party claiming implied waiver must show, by clear and unequivocal evidence, that the other party has intentionally given up a known legal right. Scibek v. Longette, 339 N.J. Super. 72, 82 (App. Div. 2001).

In general, in the local property tax field, waiver is considered in the context of limitations periods and governmental immunity. Challenges to the decisions, actions, and assessments by government officials implicate well-established principles that condition a waiver of sovereign immunity upon keen adherence to statutory provisions and must be strictly construed. See Morris-Sussex Area Co. v. Hopatcong Borough, 15 N.J. Tax 438, 447 (Tax 1996); Estate of Ehringer v. Dir., Div. of Taxation, 24 N.J. Tax 599, 617 (Tax 2009).

Finally, to invoke the equitable doctrine of estoppel against a public official or public entity, the "party claiming the estoppel must demonstrate detrimental reliance on the action or inaction of the official or entity." Marrinan v. Dir., Div. of Taxation, 17 N.J. Tax 474 (Tax 1997). It is the obligation of "'the party seeking the benefit of estoppel [who] has the burden of establishing that an officer of the State, conscious of the State's true interest and aware of the private [party's] misapprehension, stood by while the private [party] acted in detrimental






reliance.'" M.J. Ocean, Inc. v. Dir., Div. of Taxation, 23 N.J. Tax 646, 655 (Tax 2008) (quoting Natural Resource Council in the Depart. of Env. Protection, 82 N.J. at 545). Moreover, the party seeking to invoke the doctrine of estoppel "must overcome the general reluctance of our courts to apply estoppel against a public official or public entity." Marrinan, 17 N.J. Tax at 474.

Here, Crest Ridge maintains that the "Court and West Orange were well aware that Crest Ridge planned to file [its] Summary Judgment Motion on the relevant constitutional issues in this case." Further, Crest Ridge argues that West Orange's motion seeking to strike Crest Ridge's 2020 Affirmative Defenses "focuses on the same constitutional issues that are covered, at length, in this Summary Judgment Motion."

Notably however, Crest Ridge has advanced no facts in response to West Orange's motion demonstrating that West Orange inexcusably and for unexplained reasons delayed in exercising a known right thereby causing undue prejudice to Crest Ridge. Moreover, Crest Ridge has failed to offer any evidence that West Orange waived or intended to waive a known right or claim that it possessed against Crest Ridge with respect to the subject property's 2020 tax assessment. Further, Crest Ridge has not offered any facts demonstrating that it detrimentally relied on any alleged action or inaction by West Orange with respect to the subject property's 2020 tax assessment or 2020 reverse tax appeal. Accordingly, the court grants West Orange's motion seeking to strike Crest Ridge's affirmative defenses that West Orange's 2020 complaint should be barred under the doctrines of laches, waiver, and estoppel.

3. The New Jersey Uniformity Clause; the Equal Protection Clause; and the square corners doctrine.

For substantially the same reasons that the court denies Crest Ridge's motions for summary judgment, the court must deny West Orange's motion seeking to strike Crest Ridge's 2020 tax year affirmative defenses alleging violations of the New Jersey Uniformity Clause, violations of






the Equal Protection Clause, and violations of the square corners doctrine.

Finally, as neither West Orange nor Crest Ridge have adequately addressed in the motion record why the allegations raised in West Orange's 2020 reverse tax appeal should or should not be barred as it "was required to be filed in the Superior Court as an action in lieu of prerogative writs," the court declines to dismiss Crest Ridge's affirmative defense asserting such defense.

## III.   Conclusion

For the reasons set forth above, Crest Ridge's motions for summary judgment are denied. In addition, West Orange's motion seeking to strike Crest Ridge's 2020 tax year first, second, and third affirmative defenses are granted; and West Orange's motion seeking to strike Crest Ridge's 2020 tax year fourth, fifth, sixth, seventh, eighth, ninth, and tenth affirmative defenses are denied.

Very truly yours,


Hon. Joshua D. Novin, J.T.C.




